**Donald T. SHELDON, Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**No. 93–4055.**

United States Court of Appeals, Eleventh Circuit.

Feb. 24, 1995.

*cert. denied,* —— U.S. ——, 112 S.Ct. 2290, 119 L.Ed.2d 213 (1992).

Donald T. Sheldon, pro se.

Jacob H. Stillman, Susan S. McDonald, Lucinda O. McConathy, S.E.C., Office of General Counsel, Washington, DC, for respondent.

Before CARNES, Circuit Judge, and DYER and GUY,* Senior Circuit Judges.

CARNES, Circuit Judge:

After a *de novo* review of proceedings before an Administrative Law Judge ("ALJ"), the Securities and Exchange Commission found that Donald T. Sheldon, the former president of two securities broker-

---

* Honorable Ralph B. Guy, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designa-

tion.

dealer firms, had violated federal securities laws and regulations and had failed to supervise adequately his firms, which resulted in securities violations by other individuals. As a result, the SEC barred Sheldon from associating with any securities broker or dealer. Sheldon appeals that order, which we affirm.

### A.

In this type of appeal, we must affirm the SEC's factual findings if they are supported by substantial evidence. *See* 15 U.S.C. § 78y; *Elliott v. SEC,* 36 F.3d 86, 87 (11th Cir.1994); *see also Steadman v. SEC,* 450 U.S. 91, 96 n. 12, 101 S.Ct. 999, 1005 n. 12, 67 L.Ed.2d 69 (1981). We look to the record upon which the SEC based its opinion to evaluate its conclusions, and the record contains sufficient evidence of Sheldon's misconduct to support those conclusions and the sanction.[1]

For the most part, Sheldon fails to contest the SEC's findings of fraud and other securities violations. He does object to some of the SEC's findings that he failed to supervise his firms' employees adequately. We agree with the SEC that even without these findings, Sheldon's other actions justify the SEC's sanction. Moreover, the record supports the SEC's conclusions about Sheldon's insufficient supervision. "The president of a corporate broker-dealer is responsible for compliance with all of the requirements imposed on his firm unless and until he reasonably delegates particular functions to another person in that firm, and neither knows nor has reason to know that such person's performance is deficient." *In the Matter of Universal Heritage Investments Corp.,* 47 S.E.C. 839, 845 (1982) (finding securities

firm's president had properly delegated duties). Substantial evidence shows that Sheldon failed to meet that responsibility.

### B.

Sheldon also has launched a barrage of criticisms, many of them vague, against the process which created the record in this case. After reviewing the parties' briefs and the record itself, however, we find that none of these criticisms has merit. We address only the most serious ones.

First, Sheldon argues that the SEC withheld evidence favorable to his cause. In this case, because of the enormous amount of documents involved, both parties were given the opportunity to designate portions of testimony relevant to the proceedings. When presenting their case against Sheldon, the SEC investigators submitted redacted versions of testimony to the ALJ. However, the ALJ also gave Sheldon the opportunity to designate omitted portions for the record; indeed, at Sheldon's request, full transcripts were entered into evidence and considered by the ALJ in reaching his final decision. The record also reflects that Sheldon and his firms' former counsel were given access to full transcripts. Thus, Sheldon's claim that evidence was withheld is not persuasive.

Second, Sheldon argues that even though the ALJ considered full transcripts of the investigatory testimony in rendering his decision, the loss of some testimony before the SEC reviewed the ALJ's decision rendered the sanction against Sheldon invalid. Some evidentiary material was lost after the ALJ hearings and prior to the Commission's consideration of his case.[2] As the SEC's

---

1. "The fashioning of an appropriate and reasonable remedy is for the Commission, not this court, and the Commission's choice of sanction may be overturned only if it is found 'unwarranted in law or ... without justification in fact.'" *Steadman v. SEC,* 603 F.2d 1126, 1140 (5th Cir. 1979) (quoting *American Power & Light Co. v. SEC,* 329 U.S. 90, 112–13, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946)), *aff'd,* 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981). *Steadman* is binding precedent on this Court. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc). Unlike *Steadman,* where the Court found that the SEC failed to properly justify its sanction against the petitioner, in this case, we believe the

Commission explained adequately why barring Sheldon from associating with other securities brokers and dealers is necessary to protect the public interest.

2. We do not characterize "reconstructed" exhibits presented to the Commission as lost. Apparently, when some documents before the ALJ were lost, copies of those documents, when available, replaced the missing evidence. While Sheldon complains about the legitimacy of such evidence, he fails to point out any specific flaws or inaccuracies in the copies.

decision notes, however, when full transcripts were missing and could not be replaced, the SEC refused to assume facts against Sheldon's interest based upon redacted testimony. The Commission was able to justify its findings against Sheldon on the basis of evidence that was not lost.

Sheldon would have us believe that the lost evidence and the omitted portions of the redacted testimony were exculpatory, yet he fails to explain how. *Cf. Elliott,* 36 F.3d at 88 ("Petitioner next argues that the SEC erred in denying his motion to compel production of the receiver's 'final report,' which he claims would be exculpatory. However, in regard to this and other documents, [petitioner] has failed to assert the manner in which they may be exculpatory, beyond making broad general statements."). Sheldon does not explain how any omitted testimony is exculpatory.

■ Next, Sheldon complains that at least four witnesses were intimidated by the SEC staff. One witness was Don Wheeler, an attorney and the president of a broker-dealer in municipal securities who testified on Sheldon's behalf. We find no error in the ALJ's conclusion that this alleged intimidation did not hamper Sheldon's ability to present fully his defense. The ALJ allowed Sheldon to present his allegations, he considered Sheldon's objections, and he also considered Wheeler's statement that his testimony was not influenced by his conversation with the SEC attorney. As for the other three witnesses to whom Sheldon refers—Jean Casazza, Larry Kent, and Larry Rosenblum—the record fails to reflect that they were intimidated by the SEC. Nor can we find any evidence in the record supporting Sheldon's contention that the SEC encouraged witnesses to lie.

■ In addition to his claims that the SEC investigators and the ALJ acted improperly in ways specific to his particular case, Sheldon maintains that some of the SEC's general operating procedures are unconstitutional. Only two of Sheldon's arguments on this point require discussion. First, he contends that Rule 2(e) of the SEC's Rules of Practice, which allows the SEC to discipline attorneys who practice before the Commission, intimidates attorneys, with the result that they cannot provide adequate representation for their clients. That rule states:

> The Commission may deny, temporarily or permanently, the privilege of appearing or practicing before it in any way to any person who is found by the Commission after notice of and opportunity for hearing in the matter (i) not to possess the requisite qualifications to represent others, or (ii) to be lacking in character or integrity or to have engaged in unethical or improper professional conduct, or (iii) to have willfully violated, or willfully aided and abetted the violation of any provision of the Federal securities laws ... or the rules and regulations thereunder.

17 C.F.R. § 201.2(e)(1) (1994). Sheldon's argument lacks merit. "[A]n examination of the policies underlying the securities laws indicates that ... the Rule is not inconsistent with the Commission's statutory authority." *Touche Ross & Co. v. SEC,* 609 F.2d 570, 579 (2d Cir.1979) ("[Rule 2(e) ] provides the Commission with the means to ensure that those professionals, on whom the Commission relies heavily in the performance of its statutory duties, perform their tasks diligently and with a reasonable degree of competence." *Id.* at 582); *see also Davy v. SEC,* 792 F.2d 1418, 1421–22 (9th Cir.1986) (addressing critics' suggestion that "Rule 2(e) should not be used to regulate accountants or lawyers[,]" and responding that "[n]o court has adopted the view espoused in this literature."). We join the Second and Ninth Circuits in rejecting the contention that the SEC's Rule 2(e) is improper or otherwise taints the fairness of proceedings before the SEC. Having attorneys subject to ethical standards constitutes a safeguard for all parties in a proceeding, not intimidation.

■ Second, Sheldon contends that the ALJ proceedings violate the "separation of powers" and deny broker-dealers due process of law. We disagree. "[I]t is uniformly accepted that many agencies properly combine the functions of prosecutor, judge and jury." *Touche Ross,* 609 F.2d at 581. The SEC is one of these agencies. As the Second Circuit explained in one of its decisions:

[The petitioner] argues that the act runs counter to the Fifth Amendment in vesting in the Commission the functions of prosecutor, judge and jury and empowering it to fix a 'punishment' which deprived the petitioner of the right to conduct a lawful business in a lawful manner. Basically this is an attack upon the accepted procedure of numerous administrative agencies in which the functions of enforcement and adjudication are blended. That such blending is not sufficient to invalidate a hearing fairly conducted is firmly established.

*Wright v. SEC*, 112 F.2d 89, 94 (2d Cir.1940). More recently, this Court addressed an argument that the SEC improperly acts as both an enforcer and arbiter, by stating that "[a]n agency may combine investigative, adversarial, and adjudicative functions, as long as no employees serve in dual roles." *Elliott*, 36 F.3d at 87. In this case, SEC employees gathered and presented the evidence, while the ALJ, an independent adjudicator, heard that evidence.[3] *See* Kenneth Culp Davis & Richard J. Pierce, Jr., II *Administrative Law Treatise* 97 (3d ed. 1994) (noting statutory safeguards to insure ALJ independence).

### C.

Because the SEC's sanction against Sheldon is based upon sufficient record evidence of his wrongdoings and because the process which produced that evidence was not flawed, we AFFIRM the Commission's order.[4]

---

3. Sheldon also claims that the ALJ was biased against him, citing the ALJ's refusal to accept Sheldon's arguments about witness intimidation and the reference in the ALJ's initial decision to Sheldon's failure to recognize his wrongdoings during the review process. He analogizes his case to *Antoniu v. SEC*, 877 F.2d 721 (8th Cir. 1989), *cert. denied*, 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990). That case is inapposite; it involved a Commissioner who, in a public speech, declared a party's guilt while that party's suit was pending. The record in its entirety reflects the ALJ's efforts to give Sheldon a fair hearing and does not include any indication of bias.

4. The SEC's motion to dismiss the appeal is denied as moot.