**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                    Elisabeth A. Shumaker
     Clerk                                                     Chief Deputy Clerk

July 30, 1998

**TO:** ALL RECIPIENTS OF THE OPINION

**RE:** 97-4052, *Hairline v. Drug Enforcement Admin.*
Filed on July 22, 1998

The opinion filed on July 22, 1998, contains a clerical error on page one of the slip opinion. The section that lists the attorneys for the Defendants-Appellees should appear as follows:

E. Roy Hawkens, Attorney, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C. (Scott M. Matheson, Jr., United States Attorney, and Bill Ryan, Assistant United States Attorney, Salt Lake City, Utah, on the brief) for Defendants-Appellees.

A corrected copy of page one of the opinion is attached for your convenience.

Very truly yours,

Patrick Fisher, Clerk


Keith Nelson
Deputy Clerk


encl.

F I L E D
United States Court of Appeals
Tenth Circuit

JUL 22 1998

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

| | |
|---|---|
| WESLEY G. HARLINE, M.D., a licensed physician, | |
| Plaintiff - Appellant, | No. 97-4052 |
| v. | |
| DRUG ENFORCEMENT ADMINISTRATION, an agency of the United States Government; THOMAS A. CONSTANTINE, Administrator, Drug Enforcement Administration; GENE R. HAISLIP, Deputy Assistant Administrator, Drug Enforcement Administration; MARY ELLEN BITTNER, Administrative Law Judge, Drug Enforcement Administration, | |
| Defendants - Appellees. | |

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 96-CV-56-S)

J. Bruce Reading (Wesley D. Hutchins with him on the brief), Scalley & Reading, P.C., Salt Lake City, Utah, for Plaintiff-Appellant.

E. Roy Hawkens, Attorney, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C. (Scott M. Matheson, Jr., United States Attorney, and Bill Ryan, Assistant United States Attorney, Salt Lake City, Utah, on the brief) for Defendants-Appellees.

Before **SEYMOUR** , Chief Judge, **EBEL** and **KELLY** , Circuit Judges.

**KELLY** , Circuit Judge.

Plaintiff-Appellant Wesley G. Harline, M.D., challenged the constitutionality of administrative proceedings to revoke his registration to prescribe controlled substances. He appeals from the dismissal of his procedural due process claims and from the denial of preliminary injunctive relief. We have jurisdiction pursuant to 28 U.S.C. § 1291 and vacate the judgment and remand with instructions to dismiss all claims without prejudice for lack of subject-matter jurisdiction.

## Background

The Controlled Substances Act, see 21 U.S.C. §§ 801-904, established a comprehensive regulatory framework to prevent the criminal diversion of drugs with legitimate medical purposes but high potentials for abuse. The Act requires practitioners who dispense controlled substances to register with the Attorney General. See 21 U.S.C. § 822. Concomitantly, the Act authorizes the Attorney General to suspend or revoke a registration after issuing an order to show cause and holding a hearing in accordance with the Administrative Procedure Act. See 21 U.S.C. § 824(a), (c). The Attorney General has delegated this authority to Defendant-Appellee Drug Enforcement Administration (DEA).

Dr. Harline is a licensed physician registered by the DEA to prescribe controlled substances. In October 1995, the DEA served him with an order to show cause why his registration should not be suspended or revoked as inconsistent with the public interest. See 21 U.S.C. § 824(a)(4). The order to show cause alleged, among other things, that Dr. Harline (1) failed to provide the DEA required information on controlled substance prescriptions; (2) prescribed controlled substances for no legitimate medical reason, not in the ususal course of his practice, and in violation of state law; and (3) is the subject of state administrative proceedings to revoke, suspend, or otherwise restrict his medical license for controlled substance prescription abuses.

Dr. Harline exercised his right under the Act and DEA implementing regulations to a hearing before an Administrative Law Judge (ALJ), and ALJ Mary Ellen Bittner (the ALJ) was assigned to preside. Before his hearing date, Dr. Harline filed a motion for the ALJ to disqualify herself based on her alleged actual or potential bias stemming from her employment by the DEA. The ALJ denied the motion, deeming it "wholly without merit." Aplt. App. at 109.

Dr. Harline brought suit in federal district court, claiming the DEA's use of an ALJ in its employ violated his procedural due process rights to a fair and impartial tribunal. He sought injunctive relief against continuing administrative proceedings presided over by a DEA ALJ, and a declaration that the statutes and

regulations allowing a DEA ALJ to preside are unconstitutional. The DEA

moved for dismissal for lack of subject-matter jurisdiction and failure to state a

claim. The district court concluded it had jurisdiction, but then dismissed all

claims under Rule 12(b)(6), and denied preliminary injunctive relief for failure to

demonstrate a likelihood of success on the merits.

## Discussion

We review de novo the denial of a motion to dismiss for lack of subject-

matter jurisdiction. See Brumark Corp. v. Samson Resources Corp., 57 F.3d 941,

944 (10th Cir. 1995). If the district court lacked jurisdiction, "we have

jurisdiction on appeal, not of the merits but merely for the purpose of correcting

the error of the lower court in entertaining the suit." United States v. Corrick,

298 U.S. 435, 440 (1936); see Steel Co. v. Citizens for a Better Env't, 118 S. Ct.

1003, 1012-13 (1998) (holding assumption of jurisdiction to address merits

violates separation of powers).

### A. The Exhaustion Requirement

The DEA argues the district court erred in denying its motion to dismiss

for lack of subject-matter jurisdiction due to Dr. Harline's failure to exhaust

administrative remedies. See Weinberger v. Salfi, 422 U.S. 749, 764 (1975)

(stating finality of agency decision is "central to the requisite grant of subject-

matter jurisdiction."). Dr. Harline does not dispute that he has fallen short in this regard, but argues instead that the exhaustion requirement should be waived. We disagree.

Exhaustion is waivable by an agency, as when the agency itself acknowledges further administrative proceedings would not serve its purposes. See Salfi, 422 U.S. at 764-67; Bowen v. City of New York, 476 U.S. 467, 484 (1986). The DEA obviously has not waived exhaustion here. Nevertheless, agency waiver may be, in the courts' discretion, deemed improperly withheld where the plaintiff's interest in prompt resolution is so great that deference to the agency's judgment on the utility of exhaustion is inappropriate. See Mathews v. Eldridge, 424 U.S. 312, 330 (1976); Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215 (1994) (explaining court waiver is not mandatory). This is so where (1) the plaintiff asserts a colorable constitutional claim that is collateral to the substantive issues of the administrative proceedings, (2) exhaustion would result in irreparable harm, and (3) exhaustion would be futile. See Eldridge, 424 U.S. at 330-32; Koerpel v. Heckler, 797 F.2d 858, 862-63 (10th Cir. 1986). The plaintiff bears the burden of establishing these elements. See Koerpel, 797 F.2d at 863.

## B. The Requirement of a Colorable Claim

We need not address the other elements of court waiver because we agree with the DEA that, even if we were to exercise our discretion to waive exhaustion, Dr. Harline has not satisfied the essential element that his constitutional claim be colorable. The requirement that a constitutional claim be colorable to invoke federal court jurisdiction during pending administrative proceedings is well justified. The exhaustion requirement generally prevents premature interference with agency processes, allowing agencies an opportunity to (1) correct their own errors, (2) afford the parties before them and reviewing courts the benefit of their experience and expertise, and (3) compile a record which is adequate for judicial review. See Salfi, 422 U.S. at 765. If the mere allegation of a denial of due process could suffice to establish subject-matter jurisdiction, then every act of an agency would be immediately judicially reviewable, undermining a statutory scheme which limits judicial review to further the above policies. Holloway v. Schweiker, 724 F.2d 1102, 1105 (4th Cir.), cert. denied, 467 U.S. 1217 (1984). Furthermore, encouraging parties to circumvent agency procedures would diminish agency effectiveness by making enforcement efforts far more complicated and expensive. See McKart v. United States, 395 U.S. 185, 193-95 (1969).

To determine whether a claim is colorable, it is necessary to examine its merits. See Koerpel, 797 F.2d at 863. A determination that a claim lacks merit,

however, does not necessarily mean it is so lacking as to fail the colorable test. See id. (citing Boettcher v. Secretary of Health and Human Servs., 759 F.2d 719, 722 (9th Cir. 1985)). A constitutional claim in this context is not colorable if it is "immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial or frivolous." Id. (alteration in original) (quoting Boettcher, 759 F.2d at 722 (quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946))). It has also been observed that "[d]ismissal for lack of subject matter jurisdiction because of the inadequacy of [a] federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Steel, 118 S. Ct. at 1010 (quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974)).

Dr. Harline's verified complaint alleges the statutes and regulations that allow the ALJ to preside over his registration matter violate his procedural due process rights because the ALJ is employed by the DEA. The basic intuition underlying this claim is certainly not novel in human affairs. The Continental Congress listed among the usurpations of King George III that justified independence: "He has made Judges dependent on his Will alone, for the tenure of their offices, and the amount and payment of their salaries." The Declaration of Independence para. 11 (U.S. 1776). Partially in reaction to these abuses, the

Due Process Clause of the Fifth Amendment guarantees a hearing concerning the deprivation of life or a recognized property or liberty interest before a fair and impartial tribunal.  See U.S. Const., amend. V;  Withrow v. Larkin , 421 U.S. 35, 46 (1975) .  This guarantee applies to administrative adjudications as well as those in the courts.  See Withrow , 421 U.S. at 46-47.  Dr. Harline enjoys this guarantee as the DEA does not dispute his property interest in his registration and his liberty interest in practicing medicine.

Not only is an actually biased decisionmaker a due process violation, but "'our system of law has always endeavored to prevent even the probability of unfairness.'"  Id. at 47 (quoting  In re Murchison , 349 U.S. 133, 136 (1955)).  To state a due process claim for such probable unfairness, a plaintiff must sufficiently allege facts supporting a conclusion that the "risk of unfairness is intolerably high" under the circumstances of the particular case.  Id. at 58 .  In applying this standard, an administrative law judge enjoys a presumption of honesty and integrity,  see id. at 47,  which is only rebutted by a showing of "some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated."  See Mangels v. Pena , 789 F.2d 836, 838 (10th Cir. 1986) (applying  Withrow ).  In the absence of such a showing, ALJs must be presumed to be persons "'of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its

own circumstances.'" Withrow, 421 U.S. at 55 (quoting United States v. Morgan, 313 U.S. 409, 421 (1941)).

In only one paragraph of Dr. Harline's complaint did he strive to allege facts supporting his claims. He alleged that the ALJ "is an employee of the DEA, is paid by the DEA, has an office provided by and located within the DEA, is subject to job performance standards established by the DEA, and is subject to threats of removal, reprimand, deprivation of staff and/or equipment, or other reprisal if performance standards are not met, and in addition, is improperly allied or affiliated with the DEA in numerous other respects." Aplt. App. at 7, ¶ 26. Dr. Harline alleges no facts whatsoever specific to the ALJ that would show a countervailing reason to conclude she is actually biased respecting factual issues in his registration matter. His charge against her employment relationship would apply to all ALJs, and is therefore essentially a structural challenge. For the reasons set forth below, this one-paragraph allegation that the structure of agency employment of ALJs is a countervailing reason to conclude ALJs are actually biased is so inadequate as to fail to state a colorable procedural due process claim.

Dr. Harline's argument that the structural safeguards of ALJ impartiality are inadequate was foreclosed by the Supreme Court in Butz v. Economou, 438 U.S. 478, 512-14 (1978). There, the Court considered the argument that suits for

damages should be allowed against participants in administrative adjudications to deter unconstitutional conduct. The Court responded, however, that the APA "contains a number of provisions designed to guarantee the independence of hearing examiners." Id. at 514. "[T]he process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." Id. at 513; see 21 C.F.R. §§ 1301.41(a), 1316.41 (providing DEA adjudications be conducted, except where more specifically directed by DEA regulations, according to the APA).

In its analysis, the Court enumerated features of judicial adjudications that promote fairness: judges are insulated from political pressure, proceedings are adversarial in nature, resolution of issues is based on precedent, and any errors are correctable on appeal. See Butz, 438 U.S. at 512. The Court then reasoned that administrative adjudications share enough of these features that the risk of unconstitutional conduct by ALJs is insufficiently high to justify suits against them for damages. See id. at 512-13. No doubt the Court was aware the ALJs of which it spoke are employees of their administrative agencies. See 5 U.S.C. § 3105 (directing agencies to appoint ALJs to carry out Sections 556 and 557). The Court justified its additional holding that agency officials are absolutely immune in their decision to prosecute with the observation that "[t]he respondent

may present his evidence to an impartial trier of fact and obtain an independent judgment as to whether the prosecution is justified." Butz, 438 U.S. at 516. Likewise, administrative adjudications share enough of the features of judicial adjudications that the ALJ's employment with the DEA alone cannot constitute a substantial countervailing reason to conclude she is actually biased respecting factual issues in Dr. Harline's registration matter.

The Supreme Court has held that circumstances presenting a greater risk of bias than agency employment of ALJs do not violate due process. In Withrow, the Court held there was no violation where adjudicators presided over hearings on charges they themselves investigated. See Withrow, 421 U.S. at 54-55. In Richardson v. Perales, 402 U.S. 389, 408-09 (1971), the plaintiff argued an ALJ's gathering of evidence did not satisfy the appearance of fairness and that a more independent ALJ should be provided. The Court rejected this argument, noting the integrity and fundamental fairness of the administrative adjudicatory system, and that the plaintiff's "advocate-judge-multiple-hat suggestion . . . would bring down too many procedures designed, and working well, for a governmental structure of great and growing complexity." Id. at 410 (addressing Social Security Act, but noting procedures do not vary under APA).

In Ramspeck v. Federal Trial Examiners Conference, 345 U.S. 128 (1953), the respondent raised many of the issues of ALJ bias raised by Dr. Harline

- 11 -

relating to multiple pay grades for ALJs, the filling of ALJ vacancies, and removal through reductions in force. See Ramspeck , 345 U.S. at 129-30. In similar fashion, Dr. Harline contends that the minimal powers the APA leaves agencies allow them to control ALJs through compensation changes, removals, and promotions, in violation of due process. Ramspeck rejected the respondent's attack, explaining that the APA created a "special class of semi-independent subordinate hearing officers," in part by placing much of the regulatory power over their compensation, promotion, and tenure in the predecessor of the Merit Systems Protection Board (MSPB). Id. at 132. The Court went on to approve of each agency power at issue, concluding that it must be assumed the predecessor of the MSPB would prevent any abuses by agencies, given the right of ALJs to bring any abuses to that body's attention through appeal. See id. at 134-43.

To the extent Dr. Harline's claim rests on an argument that the numerous statutory and regulatory protections of ALJ decisional independence inadequately separate the investigative and prosecutorial functions from adjudicative functions, his claim is also foreclosed. It is generally conceded the APA provides even greater separation in this regard than the Constitution requires. See 2 Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise , § 9.9, at 98 (3d ed. 1994). The Supreme Court has never held any adjudicatory regime unconstitutional on this basis. See, e.g. , Perales , 402 U.S. at 410;

- 12 -

Marcello v. Bonds, 349 U.S. 302, 311 (1955); Shaughnessy v. United States ex rel. Accardi, 349 U.S. 280, 283-84 (1955); Withrow, 421 U.S. at 54-55; 2 Davis & Pierce, supra, § 9.9, at 98.

Various circuit court precedents confirm our conclusion that Dr. Harline's claim is not colorable. We have observed that the Butz Court "stressed that federal agency adjudication is characterized by the same degree of procedural integrity and independence as the judicial process, and '[] these features of the judicial process tend to enhance the reliability of information and the impartiality of the decisionmaking process . . . .'" Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 589 (10th Cir. 1994) (quoting Butz, 438 U.S. at 512)). The Eleventh Circuit rejected a procedural due process challenge involving a hearing where an ALJ presided, declaring that ALJs are "independent adjudicator[s]." Sheldon v. SEC, 45 F.3d 1515, 1519 (11th Cir. 1995) (citing 2 Davis & Pierce, supra, § 9.9, at 97, which notes safeguards to ensure ALJ independence). The Second Circuit addressed a challenge like Dr. Harline's, based on the appearance of unfairness stemming from agency employment of ALJs. The court recognized that the appearance standard cannot apply to ALJs, or "ALJs would be forced to recuse themselves in every case." Greenberg v. Board of Governors of the Federal Reserve Sys., 968 F.2d 164, 167 (2d Cir. 1992). The Ninth Circuit heard a procedural due process challenge alleging an ALJ was biased but refused to

- 13 -

recuse himself and wrongfully denied a hearing. See Hoye v. Sullivan, 985 F.2d 990, 992 (9th Cir. 1993). The court held the plaintiff failed to state even a colorable constitutional claim and dismissed for lack of subject matter jurisdiction, noting that the plaintiff may appeal such refusals within the agency, and later seek judicial review. See id.

Dr. Harline cites a number of cases involving ALJ discipline in support of his argument that agencies improperly control ALJs. See Aplt. Brief at 20 (suspending ALJ for tardiness and improper use of government credit card); id. at 23 n.14 (removing ALJ for high rate of substantive errors, and another for insubordination, disruption, and unprofessional actions). Dr. Harline also complains that ALJs may be reprimanded without MSPB involvement for "violation of agency policies and procedures, incompetence, dereliction of duty, low productivity, insubordination, and misuse of agency resources." Aplt. Brief at 17. We do not perceive in these matters the unconstitutionality Dr. Harline urges.

The independence of decisionmakers is often in tension with the other components of fundamental fairness--promptness and consistency of decision. See United States v. Seluk, 873 F.2d 15, 17 (1st Cir. 1989) (rejecting due process challenge to Sentencing Guidelines because curtailment of discretion is necessary to avoid unfairness of disparate sentences); 2 Davis & Pierce, supra, § 9.10, at

- 14 -

103. Without some agency powers over ALJs to supervise delays and the application of the same substantive standards to similarly situated parties, Dr. Harline might very well be before us claiming due process violations on these grounds. Congress has struck a balance among these values in the APA which we are not prepared to upset. Dr. Harline's additional arguments are similarly without merit, such as that agency appointment of ALJs, after prior approval of OPM, creates an improper feeling of allegiance toward the employing agency, and that the sharing of physical facilities with DEA personnel presents a constitutionally intolerable risk of unfairness.

We realize the structural protections of ALJ independence are not perfect, and may not function as designed in every case. Still, a plaintiff must specifically allege the system's failure with respect to the ALJ in question to justify waiver of the well justified requirement that administrative remedies be exhausted. Otherwise, the elaborate system designed to ensure ALJ independence will withstand a purely structural constitutional challenge like Dr. Harline's. Dr. Harline's argument that legislation has been frequently proposed to form an independent corps of ALJs only indicates that some see room for structural improvement; it does not mean the Due Process Clause requires it. While Congress has not, and may not, agree with these proponents, Dr. Harline's charges of structural shortcoming are nevertheless more appropriately presented

to that body than the federal courts.  Given our disposition based on Dr. Harline's failure to state a colorable constitutional claim, the parties' remaining arguments are moot.

VACATED and REMANDED with instructions to dismiss all claims without prejudice.