[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15918
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 28, 2011
JOHN LEY
CLERK

Agency No. 03-13750


JOHN B. BUSACCA, III,

                                                              Petitioner,

versus

SECURITIES AND EXCHANGE COMMISSION,

                                                              Respondent.


_____

Petition for Review of a Decision of the
Securities and Exchange Commission
_____

(December 28, 2011)

Before TJOFLAT, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

    John B. Busacca, III, the former president of North American Clearing, Inc.

("North American"), proceeding *pro se*, petitions this court to review a final order of the Securities and Exchange Commission ("SEC") sustaining a disciplinary action brought against him by the Financial Industry Regulatory Authority ("FINRA"), which resulted in a total fine of $30,000 and six-months' suspension from serving in any principal securities capacity.[1] FINRA found that Busacca failed to exercise reasonable supervision over North American's operations and compliance functions in violation of NASD Conduct Rules 3010 and 2110.[2] Specifically, Busacca knew that North American's conversion to a new computer program for preparing required books and records had created widespread errors in the firm's fundamental operations and would continue to do so in the future, yet he failed to take reasonable steps to solve the problems.

In his brief to this court, Busacca presents four issues.[3] First, whether substantial evidence supports the SEC's finding that Busacca failed to exercise reasonable supervision over North American's operations in violation of Rules

---

[1] FINRA was formed by the merger of the enforcement arm of the New York Stock Exchange, NYSE Regulation, Inc., and the National Association of Securities Dealers ("NASD"). The merger was approved by the SEC on July 26, 2007. Among other things, FINRA has regulatory oversight over all securities firms that do business with the public. The SEC had jurisdiction to review FINRA's decision in this matter pursuant to 15 U.S.C. § 78s(d)(2).

[2] Because Busacca's conduct at issue took place before FINRA's consolidated rules took effect, the pre-merger NASD rules applied.

[3] We state these issues in a liberal reading of Busacca's brief.

3010 and 20110.[4]  Second, whether FINRA denied Busacca denied due process in denying his request to compel the production of certain North American documents.  Third, whether the SEC erred in rejecting his claim that he was subject to selective prosecution by FINRA.  Fourth, whether the SEC abused its discretion in sustain the sanctions FINRA imposed.

In reviewing the SEC's decision, we treat the SEC's factual findings as conclusive if supported by substantial evidence.  15 U.S.C. § 78y(a)(4); *see also Sheldon v. S.E.C.*, 45 F.3d 1515, 1517 (11th Cir. 1995).  As mandated by the Administrative Procedures Act, we uphold the SEC's legal conclusions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Under this standard, the question becomes whether the SEC's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Sierra Club v. Johnson*, 436 F.3d 1269, 1273-74 (11th Cir. 2006) (quotation omitted).  We turn

---

[4]  Busacca maintains that he could not be held accountable for regulatory violations and operational problems that occurred at North American before he was employed with the firm or assumed a supervisory role.  Although he does not dispute the fact that North American's conversion, in February 2004, to a new back-office software system resulted in various operational problems, he contends that the conversion predated his presidency and that he later sought to rectify the issues once they were brought to his attention.  FINRA and the SEC took all of this into account and sanction Busacca for his dereliction of duty after he became the company's president.

now to the issues Busacca presents.

I.

Under NASD Rule 3010, member firms are required to "establish and maintain" a supervisory system "that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable NASD Rules." NASD Rule 3110(a). The SEC has long emphasized that the president of a member firm bears ultimate responsibility for compliance with all applicable requirements "unless and until he reasonably delegates particular functions to another person in that firm, and neither knows nor has reason to know that such person's performance is deficient." *Donald T. Shelton*, 51 S.E.C. 59, 1992 WL 353048, at *13 (Nov. 18, 1992); *see also Michael T. Studer*, Exch. Act Release No. 50543A, 84 S.E.C. Docket 891, 2004 WL 2735433, at *6 (Nov. 30, 2004).

The SEC has further held that the duty of supervision includes the responsibility to investigate "red flags" suggesting irregularities and to conduct adequate follow-up and review. *See Ronald Pelegrino*, Exch. Act Release No. 59125, 94 S.E.C. Docket 2912, 2008 WL 5328765, *10 (Dec. 19, 2008); *Edwin Kantor*, 51 S.E.C. 440, 1993 WL 167840, at *5 (May 20, 1993). When indications of irregularity reach the attention of those in authority, they must act "vigorously," "decisively," and "with the utmost vigilance" to detect and prevent improper

activity. *See Robert Grady*, Exch. Act Release No. 41309, S.E.C. Docket 1392, 1999 WL 222640, at *3 (Apr. 19, 1999); *Kantor*, 1993 WL 167840, at *5.

Contrary to Busacca's position, FINRA and, on review, the SEC made it clear that Busacca was only being held accountable for his failure after he became North American's president in March 2004 adequately to address the operational problems wrought by the firm's prior conversion to the new back-office system. Moreover, substantial evidence supports the finding that Busacca, while president of the firm, failed to act with the requisite vigor, decisiveness, and vigilance to address known operational deficiencies, as well as to prevent the occurrence of future regulatory violations.

II.

Busacca contends that FINRA and subsequently the SEC denied him due process of law by concealing evidence and denying his request to compel North American to produce documents "vital to his defense." He asserts that the desired documents concerning company meetings and e-mails would have demonstrated that he was intimately and actively involved in fixing all operational problems that were brought to his attention. He also asserts that the SEC excluded two documents from its certified listing of documents presented in the FINRA proceedings: (1) the May 20, 2008, order denying his production request from

North American; and (2) the August 2008 pre-hearing conference, where the FINRA Hearing Officer informed Busacca that he could request any needed documents from the court-appointed trustee overseeing North American's liquidation.

The Fifth Amendment's Due Process Clause generally requires "notice and the opportunity to be heard incident to the deprivation of life, liberty, or property at the hands of the government." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). We have not yet determined whether FINRA is a government actor subject to the Clause's requirements. Other circuits have reached conflicting holdings on this question. *See, e.g., D'Alessio v. S.E.C.*, 380 F.3d 112, 120 n.12 (2d Cir. 2004) (noting that the NASD, FINRA's predecessor, "is not a state actor subject to due process requirements"); *Rooms v. S.E.C.*, 444 F.3d 1208, 1214 (10th Cir. 2006) (finding that due process requirements apply to the NASD). To the extent the Due Process Clause applies to FINRA proceedings, its core demand is an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *see Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1317 (11th Cir. 2011). Nevertheless, in the context of criminal cases, the Supreme Court has emphasized that "[t]here is no general

6

constitutional right to discovery" and that "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977).

In the absence of subpoena power, FINRA must rely on its procedural rules to compel the production of materials from member firms. *PAZ Sec., Inc.*, Exch. Act Release No. 57656, 93 S.E.C. Docket 47, 2008 WL 1697153, at *4 (Apr. 11, 2008). FINRA Rule 8210 only authorizes the agency to compel the production of documents from member firms or associated persons. FINRA Rule 8210(a). Moreover, pursuant to FINRA Rule 9252(b), a request to compel the production of documents from a member firm may only be granted upon a showing that the "information sought is relevant, material, and non-cumulative," and "the requesting [p]arty has previously attempted in good faith to obtain the desired [d]ocuments . . . through other means but has been unsuccessful in such efforts." FINRA Rule 9252(b). In accordance with this standard, Rule 9252(a) requires that a production requests describe the category or type of documents sought with specificity, state why those documents are material, and describe the requesting party's previous efforts to obtain them. FINRA Rule 9252(a).

Assuming that FINRA constitutes a governmental entity subject to the Due

7

Process Clause, Busacca was not deprived of any process he was due. He was afforded a meaningful opportunity to be heard during the disciplinary proceedings and, despite ample opportunity to obtain the requested documents from North American, failed to satisfy the requirements of Rule 9252 by, for example, explaining the materiality of the broad category of documents sought and detailing any prior good-faith efforts to obtain the documents directly from the firm. When he reiterated his request for the documents, and finally demonstrated his failure to obtain them from North American, FINRA was unable to compel their production from the court-appointed trustee who, in the interim period, had been charged with liquidating the firm. Moreover, as the SEC aptly noted, the administrative record contained other competent evidence, including Busacca's own testimony, that described the measures Busacca took to address North American's difficulties once he assumed the role of president. Finally, the record affirmatively contradicts his claim that the SEC excluded the two identified documents from the administrative record. Accordingly, he was not denied any process to which he may have been entitled, nor has he otherwise demonstrated that the SEC abused its discretion in affirming the denial of his request to compel production from North American.

III.

8

Busacca argues that he was improperly singled out for prosecution and punishment based on his criticisms of FINRA and the securities industry. In considering his argument, we are mindful that, in light of the broad discretion accorded prosecutors in determining whom should be prosecuted, we must "presume that [Busacca's prosecutors] properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996) (quotation omitted). So long as a prosecutor has probable cause to believe that the accused has committed an offense, "the decision whether or not to prosecute . . . generally rests entirely in his discretion." *Id.* Nevertheless, under equal protection guarantees, "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (quotation omitted). "In order to dispel the presumption that a prosecutor has not violated equal protection," a claimant must present "clear evidence to the contrary." *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000) (quotation omitted).

To establish a claim of selective prosecution, a claimant must demonstrate that the "prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (quotation omitted), *cert. denied*, ___ S.Ct. ___ (U.S. Oct. 3, 2011) (No.

9

11-5916).  The discriminatory effect prong requires a showing that similarly situated individuals – *i.e.*, those who engaged in the same type of conduct in substantially the same manner, and against whom the evidence was equally strong – were not prosecuted.  *Id.*  Under the discriminatory purpose prong, the claimant must show that "the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Id.* (quotation omitted).

The SEC properly rejected Busacca's suggestion that he was subject to selective prosecution.  Busacca has not presented any evidence that FINRA's prosecution was based on a constitutionally impermissible motive, rather than the numerous customer complaints and operational violations uncovered during its investigation of North American.  Moreover, although he suggests that similarly situated individuals in the securities industry were not targeted by FINRA, there is no evidence in the record regarding whether these individuals engaged in the same type of misconduct in substantially the same manner, let alone the strength of the evidence against them.  Busacca has therefore failed to present clear evidence of either discriminatory effect or discriminatory purpose.

IV.

Finally, Busacca argues that the sanctions imposed against him by FINRA

10

were impermissibly punitive given his lack of prior disciplinary history and attempts to resolve North American's operational problems, as well as the absence of any harm to customers and any intent to avoid compliance with applicable rules. He also maintains that his peers in the securities industry, including those that "helped put the United States into financial ruin," were not similarly sanctioned, and that the SEC's statement that the sanctions imposed would encourage other supervisors to respond vigorously to known problems suggests a punitive aim.

The SEC reviews sanctions imposed by self-regulatory organizations such as FINRA to determine whether, with "due regard for the public interest and the protection of investors," the sanctions are "excessive or oppressive" or impose an unwarranted burden on competition. 15 U.S.C. § 78s(e)(2). We, in turn, may only overturn the SEC's decision to impose a particular sanction "upon finding a gross abuse of discretion." *Orkin v. S.E.C.*, 31 F.3d 1056, 1066 (11th Cir. 1994). The fashioning of an appropriate and reasonable remedy is entrusted to the SEC, and its choice of sanctions may not be disregarded unless it is "unwarranted in law or without justification in fact." *Steadman v. S.E.C.*, 603 F.2d 1126, 1139-40 (5th Cir. 1979) (quotation and ellipsis omitted); *accord Butz v. Glover Livestock Comm'n Co., Inc.*, 411 U.S. 182, 185-86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142

(1973). "[M]ere unevenness" in the application of sanctions within the authority of an administrative agency does not render a sanction imposed in a particular case invalid or unwarranted in law. *Butz*, 411 U.S. at 187-88, 93 S.Ct. at 1459.

Although the SEC is not bound by FINRA's Sanction Guidelines, it uses them "as a benchmark in conducting [its] review." *PAZ Sec.*, 2008 WL 1697153, at *3. The Sanction Guidelines generally provide that disciplinary sanctions are not intended to be "punitive," but "sufficiently remedial" to deter future misconduct and to improve overall standards in the securities industry. The Guidelines recommend a fine of $5,000 to $50,000 for failures to supervise, as well as suspensions in any or all capacities for up to two years in egregious cases, and a fine of $2,500 to $50,000 for registration violations. Among the principal considerations identified in the Guidelines regarding sanctions for supervisory violations are "[w]hether the respondent ignored 'red flag' warnings that should have resulted in additional supervisory scrutiny," and the "[n]ature, extent, size and character of the underlying misconduct." The Guidelines also generally call on adjudicators to consider the offending party's disciplinary history, acceptance of responsibility, voluntary use of corrective measures before the intervention of regulators, and assistance to FINRA examiners, as well as whether the investing public was injured by the misconduct. The SEC, however, has emphasized that a

12

lack of disciplinary history is not a mitigating factor because securities professionals "should not be rewarded for acting in accordance with [their] duties." *Philippe N. Keyes*, Exch. Act Release No. 54723, 89 S.E.C. Docket 720, 2006 WL 3313843, at *6 (Nov. 8, 2006).

The SEC did not abuse its discretion in concluding that the disciplinary sanctions imposed by FINRA, which fell well within those recommended by the Guidelines, were neither excessive nor oppressive, but appropriately remedial in light of the relevant considerations. In upholding the sanctions, the SEC appropriately gave significant weight to Busacca's failures to ensure that North American's chief compliance officer was properly registered and to adequately respond to known operational problems at the firm, which were not only numerous and protracted, but placed the security of customer accounts in jeopardy. Contrary to Busacca's suggestion, the SEC's acknowledged aim of encouraging other supervisors to respond vigorously to known operational problems was entirely consistent with the Guidelines' emphasis on deterring future misconduct and improving overall standards in the securities industry. Further, Busacca's purported lack of prior disciplinary history is not a cognizable mitigating factor, and the alleged disparity in sanctions does not render the sanctions imposed in this case invalid, particularly as the record contains no evidence concerning the precise

13

conduct and circumstances of his peers in the securities industry.

PETITION DENIED.