**Edward John MCCARTHY, Petitioner,**

**v.**

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**Docket No. 03–40977.**

United States Court of Appeals, Second Circuit.

Argued Sept. 28, 2004.

Decided April 26, 2005.

---

George Brunelle, New York, New York (Suzanne E. Auletta, Brunelle & Hadjikow, P.C., New York, New York, of counsel), for Petitioner.

Michael A. Conley, Washington, D.C. (Giovanni P. Prezioso, Eric Summergrad, Mark Pennington, Meyer Eisenberg, Secu-

rities and Exchange Commission, Washington, D.C., of counsel), for Respondent.

Before: CARDAMONE, POOLER, and WESLEY, Circuit Judges.

CARDAMONE, Circuit Judge.

Congress passed the Securities Exchange Act of 1934(Act) so that investors might have confidence in the integrity of floor traders operating on the New York Stock Exchange (N.Y.SE or Stock Exchange), who by virtue of their position enjoy advantages that the investing public does not. This appeal brings before us a conviction against a floor broker for violating various provisions of the Act and its related regulations. Insofar as the broker's petition challenges his conviction, the petition is denied. But the two-year suspension upheld by the Securities and Exchange Commission (SEC or Commission), although a matter within the SEC's discretion, presents a case where the Commission gave no meaningful reasons in support of its decision. With respect to the suspension imposed, therefore, the petition is granted, and the SEC's affirmance of that portion of the sanction is vacated and the case remanded to the Commission for further proceedings consistent with this opinion. In all other respects, the petition is denied.

Edward John McCarthy (petitioner or appellant) petitions from the September 26, 2003 order of the Securities and Exchange Commission upholding the New York Stock Exchange Board's (Board) determination that he was guilty of numerous violations of the Securities Exchange Act of 1934 and related brokerage rules. McCarthy contends that the SEC's decision is not supported by substantial evidence and violates his right to due process. He also challenges the penalty of a two-year suspension, imposed by the Stock Exchange Board and affirmed by the SEC, on the ground that the penalty is inappro-priately punitive under the circumstances of his case. McCarthy petitions this Court to reverse the Commission's determination of his guilt and vacate the two-year suspension imposed upon him.

For the reasons set forth below, we conclude that McCarthy's evidentiary and due process claims are procedurally barred, hence his petition challenging the Commission's decision finding him guilty of violating the Securities Exchange Act is denied. Insofar as the petition challenges the Commission's decision to uphold McCarthy's two-year suspension imposed by the Stock Exchange Board, we grant the petition and remand this case to the Commission for further proceedings consistent with this opinion.

## BACKGROUND

### A. *The Oakford Trades*

The facts presented by this petition bring before us another chapter in the criminal and regulatory prosecution of those involved in the so-called "Oakford scandal" in the 1990s. The Oakford Corporation (Oakford) was a Manhattan-based securities trading company that conspired with several floor traders at the NYSE by giving the brokers a beneficial interest in the Oakford account—that is, a share of net profits from trades made in the account—in return for which the brokers used their investment discretion for Oakford's benefit. *See United States v. Oakford Corp.*, 79 F.Supp.2d 357, 358–59 (S.D.N.Y.1999). Several Oakford principals and brokers were found criminally liable for their role in the scheme. *See id.* In this case, we are concerned with an actor whose role in the scheme was of a relatively minor nature.

We recite briefly the relevant facts. McCarthy is an independent broker trading on the floor of the Stock Exchange. In

June 1995, 16 months after he began operating as an independent broker, and at that time age 31, he began executing trades for Oakford. Petitioner consistently billed Oakford for his brokerage services in an amount equal to 70 percent of the net profits of these trades, and Oakford consistently paid him close to that amount. When Oakford began paying McCarthy less than 70 percent—as a result of previously undisclosed clearing fees that Oakford deducted from McCarthy's fee prior to payment—McCarthy called one of Oakford's principals, Bill Killeen, and asked why the payment was less than what McCarthy thought he was entitled to. Following this, at Killeen's instruction, McCarthy billed Oakford for an amount equal to the total net profit on his trades. The actual amount Oakford paid him continued to be about 70 percent of the net profit. Oakford was not billed for trades that resulted in a net loss.

Some of the particulars of McCarthy's trading transgressions are as follows. Of the 21 days of trading records contained in the record on appeal, there is evidence that on four occasions petitioner executed trades without objection from Oakford even though the trades were not authorized by Oakford. This conduct indicates that McCarthy exercised his own discretion when trading for the Oakford account. On numerous occasions McCarthy benefitted Oakford by "crossing trades"—that is, he executed another customer's order by buying or selling securities from the Oakford account for Oakford's benefit—and "trading ahead"—that is, McCarthy held orders for Oakford and another customer for the same stock and fulfilled the Oakford order first to allow Oakford to reap the benefit of the increase in price caused by the subsequent execution of the other customer's order.

Petitioner also failed to keep adequate records, especially by not time-stamping some order tickets and, on seven occasions, time-stamping the order tickets after the trades had been placed, suggesting that he may have executed the trades before receiving the orders to make such trades. McCarthy's records also lacked certain information on the Oakford account required by federal securities law and NYSE rules, such as the number of shares traded, the price of those shares, and whether the transfers were purchases or sales. Although petitioner employed a clerk to prepare bills for his other clients, he prepared the Oakford bills himself. He stopped handling trades for Oakford in March 1996, after performing that service for nine months.

### B. *Proceedings Below*

On June 30, 2000 the Stock Exchange's Division of Enforcement brought charges against petitioner alleging that he had violated the following statutes and regulations governing the conduct of brokers: (1) Section 11a(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78k(a)(1) (1994), SEC Rule 11a–1(a) (codified at 17 C.F.R. § 240.11a–1(a)), and NYSE Rule 95(a), which collectively prohibit trading on an account in which a broker has an impermissible interest, or on an account over which the broker exercises investment discretion; (2) SEC Rules 17a–3 and 17a–4 (codified at 17 C.F.R. §§ 240.17a–3 and 240.17a–4) and NYSE Rules 123 and 440, which require brokers to make and preserve certain records; and (3) NYSE Rules 91 and 92, which prohibit a broker from "crossing trades" and "trading ahead," respectively.

Specifically, the Enforcement Division alleged that McCarthy: (1) had an impermissible interest in the Oakford account because he was paid a percentage of the

net profits; (2) engaged in discretionary trading by placing orders without Oakford's consent and placing orders before time-stamping an order ticket; (3) crossed trades and traded ahead for Oakford's benefit; and (4) violated Stock Exchange record keeping requirements by failing to time-stamp several of his Oakford trades and neglecting to record and preserve other necessary information.

A Stock Exchange Hearing Panel took testimony in the matter and issued a decision on September 10, 2001 finding McCarthy not guilty on all charges filed against him, except those charging him with failing to keep proper records. *In re Edward John McCarthy,* Decision 01–106, 2001 WL 34056013, at *4–*5 (N.Y.S.E. Hearing Panel Sept. 10, 2001). The Hearing Panel concluded that the Enforcement Division had failed to sustain its burden of proof with respect to the charges of discretionary trading and trading on an account in which McCarthy had an interest. *Id.* at *4. It was of the view that McCarthy was an inexperienced floor broker who "simply received whatever his clients were willing to pay for his services," not realizing that his compensation was directly linked to net profits. *Id.*

The Hearing Panel also concluded that the meaning of having an impermissible "interest" in an account was unclear at the time of the violations. On October 6, 1998 the Stock Exchange, prompted by an August 21, 1998 letter from SEC Director of Market Regulation Richard Lindsey, issued NYSE Information Memo 98–34, stating that an impermissible "interest" for purposes of Rule 11a–1(a) was "any compensation arrangement that results in the member's sharing in the trading profits or trading losses of a customer's account, however structured and regardless of the extent of sharing in such profits or losses." The Hearing Panel determined that at the time McCarthy was trading for Oakford in 1995–96 it was generally understood by members of the Stock Exchange that simply being paid more by a customer based on greater profitability of trades, absent an express agreement to do so or some kind of ownership interest in the account, was not prohibited under Rule 11a–1(a). *Id.* at *3–*4.

The Hearing Panel further held there was insufficient evidence to conclude that McCarthy had engaged in discretionary trading, especially since there were other possible explanations for his behavior, including inadequate record keeping. *Id.* at *4. It therefore found petitioner guilty only of record keeping violations, censured him, and fined him $7,500. *Id.* at *5.

The Enforcement Division appealed the Panel's decision to the Stock Exchange Board on October 23, 2001. After hearing further testimony by McCarthy, the Board's Committee for Review reversed the Hearing Panel's not-guilty findings and remanded the case to the Hearing Panel for a new penalty determination. *In re Edward John McCarthy,* 2002 WL 31895284, at *1 (N.Y.S.E. Apr. 4, 2002). On remand, the Hearing Panel repeated its belief that petitioner was a relatively young and inexperienced broker at the time of the violative conduct, which occurred at "a time of regulatory confusion concerning commissions and interest in accounts." *In re Edward John McCarthy,* Decision 01–106, 2002 WL 31874859, at *1 (N.Y.S.E. Hearing Panel July 9, 2002). The Hearing Panel once again concluded that McCarthy's wrongdoing was more a function of his inexperience than a deliberate decision to violate Exchange rules. *Id.* Thus, the Hearing Panel retained the penalty of censure, but it increased the fine from $7,500 to $75,000. *Id.*

The Enforcement Division again appealed to the Board, which sustained the pen-

alty of censure and the $75,000 fine and added a two-year suspension from membership in the NYSE and employment on the Stock Exchange floor. *In re Edward John McCarthy*, 2002 WL 31895283, at *1 (N.Y.S.E. Dec. 5, 2002). The Board offered no explanation for its decision to suspend McCarthy, other than to explain that it thought the penalty appropriate "in light of Exchange precedent and the particular facts and circumstances of this case." *Id.*

Petitioner then appealed to the SEC. The Commission reviewed the extensive record developed by the Hearing Panel and the Board and affirmed the finding of guilty on all charges and the penalty. *In re Edward John McCarthy*, Exchange Act Release No. 48,554, 81 S.E.C. Docket 465, 2003 WL 22233276 (Sept. 26, 2003). The Commission found appellant "shared with Oakford in the economic risk of the trades," and rejected his explanation that "he simply complied with a customer's request to calculate the customer's profits, ... [and] although he billed Oakford based on the profits generated by his trading for the account, he believed he would be paid whatever Oakford wanted to pay." *Id.* at *5. Rather, the Commission concluded that McCarthy had an actual agreement with Oakford to share in profits and losses, *id.* at *5–*6, and that this constituted an ownership interest in the account that McCarthy knew, or should have known, was impermissible, even under pre–1998 interpretations of Rule 11a–1(a). *Id.* at *10.

The SEC also ruled that appellant engaged in discretionary trading. It based this finding on his practice of executing trades contrary to Oakford's instructions and executing trades before time-stamping orders from Oakford. The SEC concluded that petitioner used a floor broker's advantage to execute profitable trades for Oak-

ford at opportune times. *Id.* at *6. The Commission also concluded that because McCarthy had an impermissible interest in the Oakford account, his practice of crossing trades and trading ahead for Oakford's benefit was a violation of the Securities Exchange Act. *Id.* at *7. Moreover, the Commission upheld the Hearing Panel's and the Board's findings that McCarthy was guilty of record keeping violations. *Id.* at *7–*8. McCarthy concedes the record keeping violations, but appeals the guilty findings made on the other charges.

Finally, the Commission, acting under § 19(e) of the Securities Exchange Act, 15 U.S.C. § 78s(e), upheld the sanctions imposed by the Stock Exchange Board, including the censure, fine, and two-year suspension. The Commission determined that the suspension and fine were justified to "hold ... floor brokers to the highest standards of honesty and integrity," *id.* at *9, in particular because

> McCarthy violated the principles of commercial honor and trust that are the hallmark of the exchange auction market system. His violations go to the heart of the duties a floor broker owes a customer. He used the time and place advantages available to him in his position as a floor broker to advantage the Oakford account, an account in which he had an interest and over which he exercised investment discretion. He placed his own interest above the interests of his customers [through] numerous improper trades that occurred over the course of nearly a year.

*Id.* at *10–*11. The Commission found that in light of the seriousness of McCarthy's misconduct and the temporary nature of the trading ban, further consideration of mitigating factors was unwarranted. *Id.* at *11.

## DISCUSSION

Appellant asks us to consider whether the Commission: (1) erred in not overturning the Board's summary reversals of the Hearing Panel and in not remanding the case to compel the Board to give a reasoned opinion; (2) denied him due process by applying its 1998 interpretation of Rule 11a–1(a) to conduct that occurred in 1995 and 1996; (3) incorrectly concluded that he traded on an account in which he held an impermissible interest based on a finding not supported by substantial evidence; and (4) abused its discretion by affirming the sanctions meted out by the Board.

## I Failure to Challenge the Discretionary Trading Conviction

### A. *Obligations of Appellate Counsel*

■ In his opening brief before this Court, petitioner did not challenge the SEC's determination that he engaged in discretionary trading. He commented on the discretionary trading charge in his recitation of the factual background, but did not dispute the Commission's discretionary trading findings as unsupported by substantial evidence, violating due process, or on any other ground. Instead, the charge of discretionary trading is made the centerpiece of appellant's reply brief.

■ We think it reasonable to hold appellate counsel to a standard that obliges a lawyer to include his most cogent arguments in his opening brief, upon pain of otherwise finding them waived. *See D'Alessio v. Sec. & Exch. Comm'n,* 380 F.3d 112, 120 n. 11 (2d Cir.2004); *Booking v. Gen. Star Mgmt. Co.,* 254 F.3d 414, 418 (2d Cir.2001). Thus, arguments not raised in an appellant's opening brief, but only in his reply brief, are not properly before an appellate court even when the same arguments were raised in the trial court. *See Knipe v. Skinner,* 999 F.2d 708, 711 (2d Cir.1993). Compliance with Rule 28(a)(9) of the Federal Rules of Appellate Procedure requires an appellant to state his contentions and provide reasons for them. Adhering to this Rule promotes the orderly briefing and consideration of appeals. *See Mitchell v. Fishbein,* 377 F.3d 157, 164 (2d Cir.2004).

In his reply brief petitioner contends that the challenge to his trading conviction was "subsumed" within his overall challenge to the procedural fairness and evidentiary basis of the Commission's decision. Quite the contrary, the due process and evidentiary challenges raised in the opening brief related solely to his contention that he did not have an impermissible interest in the Oakford account. To the extent that an unexpressed challenge to the discretionary trading conviction may have been hidden between the lines of petitioner's brief, it is not our obligation to ferret out a party's arguments. That, after all, is the purpose of briefing.

■ Discretionary trading is an independent violation under Rule 11a–1(a), and thus we need not reach McCarthy's due process and evidentiary challenges because an independent ground for the Commission's decision remains unchallenged. Of course, we may excuse an appellant's failure to make an argument in his opening brief and give a further opportunity to the parties to address the issue. *Mitchell,* 377 F.3d at 165. McCarthy insists that, at most, he simply "de-emphasized" the discretionary trading issue in his opening brief and asks us to exercise our discretion to overlook this lapse.

### B. *No Manifest Injustice Present*

■ We are inclined to overlook a party's failure to properly raise an issue on appeal if manifest injustice would otherwise result. *Frank v. United States,* 78 F.3d 815, 833 (2d Cir.1996), *vacated on*

*other grounds,* 521 U.S. 1114, 117 S.Ct. 2501, 138 L.Ed.2d 1007 (1997); *United States v. Babwah,* 972 F.2d 30, 34–35 (2d Cir.1992). No injustice would result in this case because McCarthy's due process and evidentiary challenges—which were waived due to his failure properly to challenge the discretionary trading conviction on appeal—are without merit.

Since we do not reach or decide the merits of McCarthy's claims—but simply discuss them as a predicate to finding the absence of manifest injustice in our refusal to overlook his failure to challenge an independent ground of decision—our review shall be brief. First, we note that we have no occasion to consider alleged error in the Board's summary reversals of the Hearing Panel so long as the Commission conducted a thorough *de novo* review of the record and reached an independent decision that was not "infected" by the Board's alleged error. *R.H. Johnson & Co. v. Sec. & Exch. Comm'n,* 198 F.2d 690, 695 (2d Cir. 1952). The Commission independently evaluated the extensive factual record developed by the Hearing Panel and the Board and provided a lengthy analysis of McCarthy's case, ultimately reaching a reasoned decision upholding the Board's decision. There is thus no need for us to review the lack of reasons for the Board's decision, because the due process afforded McCarthy before the Commission cured any alleged defect.

Second, we have no occasion to consider whether petitioner's due process rights were violated by the application of the impermissible interest standard announced in NYSE Information Memo 98–34 (1998) to conduct that occurred in 1995 and 1996, when regulatory requirements had not yet been defined with precision. We note that McCarthy testified that he knew it would be a violation of Rule 11a–1(a), as that rule was understood in 1995 and 1996, for him to have an agreement to link his compensation to net profits. The Commission had substantial evidence before it to find that McCarthy's testimony that he had no expectation as to what Oakford would pay him was not credible because he consistently billed and received 70 percent of the net profits on the Oakford account. Thus, the proof before the Commission established that McCarthy knew or should have known, even in 1995 and 1996, that his actions were prohibited by Rule 11a–1(a).

Third, we have little trouble concluding that the Commission had sufficient evidence of McCarthy's impermissible interest in the Oakford account. We review the SEC's factual decisions for sufficiency of the evidence. *Upton v. Sec. & Exch. Comm'n,* 75 F.3d 92, 96 (2d Cir.1996). As we just observed, the SEC had sufficient proof before it to conclude that McCarthy knew he was being compensated from the Oakford account's net profits and that he consented to this arrangement. Petitioner's testimony that he had no idea how much Oakford was going to pay him and had no idea why Oakford wanted him to bill for 70 percent of the net profits on the account suggests a level of naivety on McCarthy's part that, even for a somewhat inexperienced broker, strains credulity and was properly discounted by the Commission.

In sum, we see no reason to excuse petitioner's failure to challenge properly his discretionary trading conviction. An independent ground of decision must be expressly challenged on appeal and McCarthy did not do so. We conclude, therefore, that petitioner's substantive claims with respect to his conviction are procedurally barred and, in any event, without merit.

## II  The Two–Year Suspension

Appellant does not challenge the Hearing Panel's decision to censure him and

fine him $75,000. He does attack the Board's imposition of a two-year suspension from Stock Exchange membership and trading on the Stock Exchange floor, which the Commission subsequently upheld.

An appeals court reviews the SEC's affirmance of Stock Exchange sanctions for abuse of discretion, and will only overturn sanctions if they are "unwarranted in law [or] without justification in fact." *Markowski v. Sec. & Exch. Comm'n,* 34 F.3d 99, 105 (2d Cir.1994) (alteration in original). Such review receives only limited benefit from comparison to sanctions imposed in other cases due to the highly fact-dependent nature of the propriety of sanctions. *See D'Alessio,* 380 F.3d at 119. "Typically, such an abuse of discretion will involve either a sanction palpably disproportionate to the violation or a failure to support the sanction chosen with a meaningful statement of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" *Reddy v. Commodity Futures Trading Comm'n,* 191 F.3d 109, 124 (2d Cir.1999) (quoting 5 U.S.C. § 557(c)(3)(A)).[1] We review each case on its own facts, and, if we conclude that the sanction is excessive or does not serve its intended purposes, we have discretion to reduce or eliminate it. *See Arthur Lipper Corp. v. Sec. & Exch. Comm'n,* 547 F.2d 171, 184–85 (2d Cir. 1976) (finding the penalty of expulsion from trading "too severe" in light of the nature of petitioner's transgressions and mitigating factors, and reducing the sanction to a one-year suspension that had already expired).

It is familiar law that the purpose of expulsion or suspension from trading is to protect investors, not to penalize brokers. In *Wright v. Securities & Exchange Commission,* we noted that the Securities Exchange Act "authorizes an order of expulsion not as a penalty but as a means of protecting investors, if in the Commission's opinion such action is necessary or appropriate to that end.... [T]he purpose of the order is remedial, not penal." 112 F.2d 89, 94 (2d Cir.1940); *Assoc. Sec. Corp. v. Sec. & Exch. Comm'n,* 283 F.2d 773, 775 (10th Cir.1960) ("Exclusion from the securities business is a remedial device for the protection of the public."). The Commission itself has recognized this. *See, e.g., In re Howard F. Rubin,* Exchange Act Release No. 35,179, 58 S.E.C. Docket 1426, 1994 WL 730446, at *1 (Dec. 30, 1994) ("It is well-settled that such administrative proceedings are not punitive but remedial. When we suspend or bar a person, it is to protect the public from future harm at his or her hands."). Our foremost consideration must therefore be whether McCarthy's sanction protects the trading public from further harm. We also note that deterrence has sometimes been relied upon as an additional rationale for the imposition of sanctions. *See, e.g., Steadman v. Sec. & Exch. Comm'n,* 603 F.2d 1126, 1142 (5th Cir.1979) ("[T]he Commission ... may consider the likely deterrent effect its sanctions will have on others in the industry."). We have suggested that sanctions such as temporary trading bans may be appropriate to "secure compliance with the rules, regulations, and policies" governing traders, *Boruski v. Sec. & Exch. Comm'n,* 289 F.2d

1. Although *Reddy* concerned sanctions imposed under the Administrative Procedure Act (APA), it accurately states our standard for finding an abuse of discretion in the imposition of sanctions by the SEC. *See Arthur Lip-*

*per Corp. v. Sec. & Exch. Comm'n,* 547 F.2d 171, 183–84 (2d Cir.1976) (stating that this Court's review of sanction imposed by the SEC is governed by the APA).

738, 740 (2d Cir.1961), and the SEC has expressly adopted deterrence, both specific and general, as a component in analyzing the remedial efficacy of sanctions. *See In re Investment Planning, Inc.,* Exchange Act Release No. 32,687, 54 S.E.C. Docket 1362, 1993 WL 289728, at *5 (July 28, 1993) ("[T]o be truly remedial ... sanctions must deter the applicants before us and others who may be tempted to engage in similar violations."). Although general deterrence is not, by itself, sufficient justification for expulsion or suspension, we recognize that it may be considered as part of the overall remedial inquiry.

■ Here, however, the SEC made no findings regarding the protective interests to be served by removing McCarthy from the floor of the Stock Exchange, nor did it even provide a deterrence rationale for its decision. Rather, the Commission decided that McCarthy's violations "go to the heart of the duties a floor broker owes a customer" and believed that "[h]e placed his own interests above the interests of his customers" in "ongoing, numerous improper trades that occurred over the course of nearly a year." *In re Edward John McCarthy,* Exchange Act Release No. 48,-554, 81 S.E.C. Docket 465, 2003 WL 22233276, at *10–*11 (Sept. 26, 2003). We note that the Commission's justification for upholding the suspension merely recites, in general terms, the reasons why McCarthy's conduct is illegal. Moreover, the entire passage justifying the Commission's decision to uphold the suspension appears to be a nearly verbatim copy of the reasons given for upholding different sanctions in other cases involving different violations, circumstances, mitigating factors, and harm to the trading public. *See In re Richard Kwiatkowski,* Exchange Act Release No. 48,707, 81 S.E.C. Docket 1385, 2003 WL 22438810, at *8 (Oct. 28, 2003); *In re John R. D'Alessio,* Exchange Act

Release No. 47,627, 79 S.E.C. Docket 2786, 2003 WL 1787291, at *13 (April 3, 2003). This in itself suggests that the Commission did not devote individual attention to the unique facts and circumstances of this case.

Nonetheless, if the purpose of suspension was punitive, we would have little trouble upholding the two-year suspension on these grounds. But the Commission did not address the fact that McCarthy was a minor participant in the Oakford scheme whose actions caused the trading public less harm than other members, his violations were of relatively short duration and ended in 1996, and by all accounts he has been lawfully trading ever since. Indeed, McCarthy has been trading on the floor of the Stock Exchange for the past 11 years (the two-year suspension was stayed pending appeal to the SEC and this Court), and the SEC does not dispute McCarthy's contention that, with the exception of his involvement with Oakford in 1995 and 1996, he has operated lawfully and within the rules. Thus, for nine years McCarthy has proven himself to be a rule-abiding trader. Even at the time the Board summarily imposed the two-year suspension, McCarthy had been trading without incident for six years.

Moreover, the regulations prohibiting the activity in which McCarthy engaged, together with whatever ambiguities and uncertainties may have been present in 1996, have since been made clear. The entire billing process at the Stock Exchange has been reformed as a result. The Commission made no findings that would indicate any additional protection the trading public would receive, especially in light of the current regulatory climate, from the suspension of a trader who has operated successfully and lawfully for the past nine years. Since the SEC did not address the compelling facts in the record

that suggest the sanction may be excessive and punitive, we have no basis from which to determine that the sanction was not arbitrary.

■ To be sure, characteristics of the offense will often be relevant to remedial justifications for suspension. The seriousness of the offense, the corresponding harm to the trading public, the potential gain to the broker for disobeying the rules, the potential for repetition in light of the current regulatory and enforcement regime, and the deterrent value to the offending broker and others are all relevant factors to be considered in deciding whether the sanction is appropriately remedial and not excessive and punitive. In this case, the record contains mitigating facts and circumstances from which a compelling argument can be made that suspending McCarthy now will not serve remedial interests and will work an excessive and punitive result—namely, the destruction of the brokerage practice McCarthy has built during several years of rule-abiding trading. We express no opinion on whether these circumstances in fact render the suspension irretrievably excessive and punitive, and we thus decline McCarthy's invitation to reverse the penalty outright. We do, however, believe that the Commission's decision simply to copy language from other cases—which merely recites general reasons why the challenged conduct is illegal—is not responsive to the mitigating facts and circumstances unique to this case, does not address the remedial and protective efficacy of the chosen sanction, does not provide a reasoned basis from which we can conclude that the decision is not arbitrary, and therefore constitutes an abuse of discretion.

■ We do not, of course, hold that the Commission is required to make any sort of "ritualistic incantation" regarding remedial effect. *See Reddy*, 191 F.3d at 125. Some explanation addressing the nature of the violation and the mitigating factors presented in the record of each case is required, however. *See id.* Although we have accepted Commission findings similar to those noted here in other cases, *see, e.g, D'Alessio*, 380 F.3d at 123–24, we reiterate that each case must be considered on its own facts, and the SEC should not take our willingness to accept its findings in one case as an indication that those findings will necessarily be sufficient in other cases that present different violations, mitigating factors, sanctions, and harm to the trading public. It is inherent in the nature of abuse of discretion review that as the circumstances in a case suggesting that a sanction is excessive and inappropriately punitive become more evident, the Commission must provide a more detailed explanation linking the sanction imposed to those circumstances if it wishes to uphold the sanction. As already explained, we think the facts of this case merit vacatur of the SEC's decision upholding the suspension.

In sum, we hold that the Commission failed to support its decision to uphold the sanction with findings and conclusions, and provided no meaningful statement of the reasons or basis therefore in support of the discretion it exercised on this record. *See Reddy*, 191 F.3d at 124. Hence, the SEC's decision affirming the sanction is unwarranted in law and without justification in fact. *See Markowski*, 34 F.3d at 105. We thus conclude that the Commission's decision upholding McCarthy's two-year suspension is an abuse of its discretion and must vacate it. We remand, however, to allow the Commission an opportunity to reconsider its decision in light of the mitigating facts and circumstances presented by the record. We base our decision solely on the SEC's lack of findings and conclusions regarding the remedial and protective efficacy of McCarthy's

suspension, and do not hold that when a trader's suspension is stayed pending appeal, he is entitled to a reversal of that suspension if he engages in no further violations during the period of the stay.

## CONCLUSION

We have considered the appellant's remaining arguments and find them all to be without merit. For the foregoing reasons, we deny the petition, except as to the sanctions imposed on petitioner. We grant the petition insofar as it challenges the two-year suspension, and the SEC's affirmance of the suspension is vacated and remanded for further proceedings consistent with this opinion. In all other respects petitioner's challenge to the sanctions is denied.