NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 18, 2007[*]
Decided April 25, 2007

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-3788

| | |
|---|---|
| DAVID C. HO, *Petitioner,* | Petition for Review of an Order of the Securities and Exchange Commission. |
| *v.* | |
| SECURITIES AND EXCHANGE COMMISSION, *Respondent.* | No. 54481 |

**O R D E R**

The Business Conduct Committee ("BCC") of the Chicago Board of Options Exchange ("CBOE") imposed sanctions against David Ho after finding that he violated CBOE rules by engaging in prohibited transactions while he was suspended and by continuing to make transactions after his CBOE membership had expired. Ho appealed to the CBOE's Board of Directors, which upheld the BCC's findings and imposition of sanctions. Ho then appealed to the Securities and

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

Exchange Commission ("SEC"), which also affirmed the disciplinary action. Ho now appeals the decision of the SEC. Ho argues that bias in the BCC's procedures deprived him of a fair hearing, that substantial evidence did not support some of the facts on which the SEC based its sanctions, and that his three-year suspension is unwarranted because it would not protect the trading public from harm. We affirm.

Ho was registered with the CBOE as a nominee market maker--a person authorized to make transactions on the CBOE as a dealer-specialist--for a member organization. In 2002 the BCC, which conducts disciplinary proceedings for violations of CBOE rules, issued formal charges against him for rules violations stemming from alleged harassment and intimidation of other members of his trading crowd. In October 2003, Ho submitted an Offer of Settlement to resolve the charges. In the Offer, Ho stipulated that he "engaged in an on-going course of verbal and physical conduct intended to harass, threaten and intimidate" others in his trading crowd. He also stipulated that this conduct violated CBOE rules and that he understood that the BCC's decision would "become part of his disciplinary record and [might] be considered in any future [CBOE] proceeding." And Ho proposed a sanction of a censure, a $15,000 fine, completion of an anger-management course, and an eight-week suspension from CBOE membership, to begin no later than January 2004. The BCC accepted Ho's Offer of Settlement in October 2003 ("2003 Order").

Throughout his eight-week suspension, Ho engaged in hundreds of stock and options transactions that were prohibited by the terms of the 2003 Order. He also continued to engage in stock and options transactions after his CBOE membership lapsed in January 2004. In July 2004, the BCC issued a Statement of Charges against Ho for rules violations stemming from these trading activities. At a hearing before a panel of the BCC, Ellen Miller, a CBOE Senior Investigator, presented evidence that Ho engaged in improper trades even after the CBOE allowed Ho to delay his suspension so that he would have time to wind down his positions. At the hearing Ho admitted that he engaged in prohibited stock and options transactions while under suspension. In August 2004, the BCC found that Ho violated CBOE rules and sanctioned him with a censure, fined him $50,000 and suspended him for three years.

Ho appealed to the CBOE's Board of Directors, which upheld the BCC's findings and sanctions. He then appealed to the SEC, *see* 15 U.S.C. § 78s(d)(1), (2), which undertook an independent review of the record, concurred with the CBOE's findings, and affirmed the sanctions. Ho appeals this decision. *See* 15 U.S.C. § 78y(a)(1).

The scope of our review of the SEC's findings is limited. *See Otto v. SEC*, 253 F.3d 960, 964 (7th Cir. 2001). We give conclusive effect to the SEC's findings of fact if they are supported by substantial evidence in the record. *See McConville v. SEC*, 465 F.3d 780, 786 (7th Cir. 2006). We review the SEC's imposition of sanctions for abuse of discretion. *See Schellenbach v. SEC*, 989 F.2d 907, 909 (7th Cir. 1993).

Ho first argues that the disciplinary proceedings before the BCC were tainted with bias. He claims that his right to due process was violated because Andrew Spiwak, the CBOE's chief enforcement officer who prosecuted him in both disciplinary actions, attended the BCC's preliminary discussion of whether to issue charges against Ho. Ho asserts that the CBOE, in violation of SEC Releases and CBOE Rules 17.2, 17.3, and 17.4, commingled its investigative and enforcement functions in allowing Spiwak to attend. According to Ho, Spiwak believed that the CBOE "should prosecute and severely sanction" him, and concludes that "[t]here is no way of measuring [Spiwak's] influence" on the BCC members present, some of whom later served on Ho's hearing panel. Ho urges that Spiwak's influence unduly biased these members against him.

Constitutional due process standards apply only if the CBOE is a state actor, s*ee Otto*, 253 F.3d at 965. But, Ho and the SEC ignored the issue of whether the CBOE is a state actor in their arguments to this court; thus, to the extent that Ho's argument presumes CBOE's status as a state actor, we reject it and will not consider whether the proceedings violated a constitutional right to due process. *See Gold v. SEC*, 48 F.3d 987, 991 (7th Cir. 1995).

Ho also raises a due process argument not based on constitutional requirements. He asserts that the BCC proceedings violated a "due-process-like" requirement involving general principles of fairness and impartiality. However, our review in these circumstances is narrow and we will consider errors in BCC proceedings "only if and to the extent they infected the [SEC's] action by leading to error on its part." *Schellenbach*, 989 F.2d at 909 (internal quotation and citation omitted). Here, Ho does not challenge the fairness of the SEC proceedings; therefore, we decline to revisit the BCC proceedings.

Ho next challenges two SEC factual findings upholding CBOE findings on which he claims his sanctions were based. First, he claims that the CBOE and SEC's finding that he "committed serious rule violations involving harassment and intimidation" was not supported by substantial evidence. The CBOE and SEC relied on Ho's 2003 stipulation that he "engaged in an on-going course of verbal and physical conduct intended to harass, threaten and intimidate" other CBOE members. Ho's argument is difficult to follow, but he seems to suggest that this stipulation cannot be factual evidence because it is a legal conclusion.

Because the SEC engages in an independent review of the BCC record, we are highly deferential of the SEC's findings of fact and will give them conclusive effect as long as they are supported by substantial evidence, *see McConville*, 465 F.3d at 786; *see also* 15 U.S.C. § 78y(a)(4).

Ho cannot now contest the stipulations in his Offer of Settlement, which the BCC accepted, because stipulations bind the parties that enter into them. *River v. Commercial Life Ins. Co.,* 160 F.3d 1164, 1173 (7th Cir. 1998). Ho was bound to his stipulation, including his assertion that he "engaged in an on-going course of verbal and physical conduct intended to harass, threaten and intimidate" other CBOE members. Further, Ho misapprehends the CBOE and SEC's finding, because they merely took notice of the existence of that Order, including Ho's stipulations, as part of Ho's disciplinary record and did not make a separate finding that Ho engaged in the underlying harassing conduct. After an independent review of the record, the SEC acted within its discretion when it considered Ho's disciplinary history of rules violations in upholding the three-year suspension.

Second, Ho claims that substantial evidence does not support the CBOE and SEC's finding that the CBOE accommodated him when it permitted him to serve his suspension three months after it issued its 2003 Order. The only evidence reflecting that the CBOE accommodated Ho was Ellen Miller's testimony, which Ho claims consisted of unreliable hearsay (because it was based in part on Spiwak's statements) and thus was insufficient to support the CBOE and SEC's finding.

Given our deferential standard of review, we cannot say that the SEC erred in basing its determination on the lack of evidence that Miller was biased and the lack of "any testimony or other evidence . . . that contradicts Miller's statement." Although Ho claims that Spiwak was biased against him, he does not purport to show that Miller gave undue weight to Spiwak's statements over the other sources on which she relied. There was sufficient basis for the SEC to find Miller's testimony reliable, thus her testimony was substantial evidence that the CBOE accommodated Ho. *See Gimbel v. Commodity Futures Trading Comm'n*, 872 F.2d 196, 199 (7th Cir. 1989).

Ho next asks us to set aside his three-year suspension because the SEC did not adequately explain how such a penalty would protect the trading public. Ho argues that suspension from securities exchange membership is warranted only if the suspension will protect the public, and not if the sole purpose is to punish a broker. His suspension, he claims, is "solely punitive in nature," and is thus inappropriate.

Although some courts have held that suspension from securities trading should serve a remedial purpose to protect the public, rather than as punishment

for the offender, s*ee McCarthy v. SEC*, 406 F.3d 179 (2d Cir. 2005), the CBOE rules list several additional factors that the BCC takes into account before imposing sanctions, including the offender's recidivism and the importance of tailoring sanctions to the misconduct at issue, *see* CBOE Rule 17.11. The Rules also state that the BCC "should design sanctions to prevent and deter future misconduct by wrongdoers." *Id.*

The SEC did not abuse its discretion in affirming the BCC's sanctions determination, *see Schellenbach*, 989 F.2d at 909, and Ho's three-year suspension was not unwarranted in law or unjustified in fact, *see Otto*, 253 F.3d at 964. The investing public has an interest in financial markets that are free of the unnecessary risk that may arise when regulatory requirements, including margin requirements, are circumvented. As a market maker, Ho's trades received favorable margin treatment, but he misused this treatment when he traded while suspended from the CBOE and after his CBOE membership had lapsed. The SEC thus did not abuse its discretion when it agreed with the CBOE that sanctions were warranted because "improperly receiving favorable market-maker margin treatment [is] harmful to the public interest" and that "impermissible use of margin causes systemic risk to the market and the public." In addition, the SEC took into account the other factors listed in the CBOE's rules, concluding that "Ho's recidivism, his disregard for [the CBOE's] disciplinary authority in violating his suspension, and the seriousness of his violations all serve as adequate support" for Ho's sanctions. The SEC agreed with the CBOE that the sanctions were necessary to "make[] clear to [Ho] and others that restrictions imposed in disciplinary decisions are not to be ignored." These determinations show that a three-year suspension is not unwarranted by law or unjustified in fact. *See Otto*, 253 F.3d at 964. Unlike *McCarthy v. SEC*, 406 F.3d 179 (2d Cir. 2005), on which Ho relies, the SEC here engaged in a thorough analysis of the factors that contributed to Ho's three-year suspension including protection of the public interest and general deterrence.

Accordingly, we affirm the decision of the SEC.