18-3386-ag (L)
*Graham v. S.E.C.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of December, two thousand nineteen.

PRESENT:    ROBERT D. SACK,
            DENNY CHIN,
            JOSEPH F. BIANCO,
                 *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BRETT THOMAS GRAHAM,
                 *Petitioner*,

                 -v-                                      18-3386-ag
                                                          18-3778-ag

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
                 *Respondent*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PETITIONER:                    RALPH A. SICILIANO (Richard W. Trotter, *on the brief*), Tannenbaum Helpern Syracuse & Hirschtritt LLP, New York, NY.

FOR RESPONDENT:                    SARAH R. PRINS, Senior Attorney (Theodore Weiman, Senior Litigation Counsel, *on the brief*), *for* Robert B. Stebbins and John W. Avery, the United States Securities and Exchange Commission, Washington, DC.


Petitions for review of orders of the United States Securities and Exchange Commission.

**UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED, AND DECREED** that the petitions for review are **DENIED**.

Petitioner Brett Thomas Graham appeals two orders of the United States Securities and Exchange Commission (the "Commission") relating to an order entered by the Commission in 2015 barring him from the securities industry. First, Graham contends that the Commission wrongfully denied his application for consent to associate pursuant to 17 C.F.R. § 201.193 ("Rule 193"). *See* S. App'x at 1-9. Second, he contends that the Commission wrongfully denied his request for modification pursuant to Rule 506(d)(2)(ii) of the Securities Act of 1933 ("Rule 506"). *See* J. App'x at 319-35. Graham also argues that the Commission's continued industry ban is excessive under the Eighth Amendment of the United States Constitution. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

2

Graham was the chief executive officer and principal owner of VCAP Securities, LLC ("VCAP"), a broker-dealer firm registered with the Commission. In 2013, the Commission began investigating Graham in connection with VCAP's involvement in liquidating collateralized debt obligations. The Commission's investigation revealed that VCAP was surreptitiously using an intermediary to bid in the liquidation auctions it ran. Before any administrative proceedings were initiated, Graham and the Commission entered into a settlement agreement that was memorialized in a February 19, 2015 consent order (the "Bar Order"). *See* J. App'x at 28-41. Under the agreement, Graham was barred from the securities industry and was required to pay $327,733 in disgorgement and fines. He was permitted to continue working for VCAP for one year in a limited, supervised capacity to wind down the business. Though Graham's ban was indefinite, the Bar Order permitted him "to apply for reentry [to the securities industry] after three years." J. App'x at 10.

Less than two years later, on January 10, 2017, Graham filed his Rule 506 motion to modify the Bar Order. The Rule 506 motion asked the Commission to remove the provisions forbidding Graham from associating with investment advisers, brokers, and dealers. It also asked the Commission for a waiver that would allow issuers to associate with Graham without losing their ability to rely on Rule 506's private offering exemption. In April of 2018 -- before the Commission ruled on Graham's Rule 506 motion but more than three years after his industry bar went into effect -- Graham filed

3

his Rule 193 application for consent to associate. The Rule 193 application asked "that the bar provisions of the [Bar Order] be removed in their entirety." J. App'x at 216. Both the Rule 506 motion and Rule 193 application were denied. These consolidated petitions for review followed.

## I. Graham's Applications

We must affirm the Commission's findings of fact if they are supported by "substantial evidence." *Mathis v. S.E.C.*, 671 F.3d 210, 215-16 (2d Cir. 2012). The Commission's "actions, findings, or conclusions of law" will only be set aside "if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* at 216 (quoting 5 U.S.C. § 706(2)(A)).

## A. The Rule 193 Application

An applicant to the Commission for consent to associate must show that his involvement in the securities industry "would be consistent with the public interest." 17 C.F.R. § 201.193(c); *see also* Preliminary Note to 17 C.F.R. § 201.193 ("The nature of the supervision that an applicant will receive or exercise as an associated person with a registered entity is an important matter bearing upon the public interest."). To make such a showing, the applicant must file an affidavit addressing the following factors:

> (1) The time period since the imposition of the bar; (2) Any restitution or similar action taken by the applicant to recompense any person injured by the misconduct that resulted in the bar; (3) The applicant's compliance with the order imposing the bar; (4) The applicant's employment during the period subsequent to imposition of the bar;

4

(5) The capacity or position in which the applicant proposes to be associated; (6) The manner and extent of supervision to be exercised over such applicant and, where applicable, by such applicant; (7) Any relevant courses, seminars, examinations or other actions completed by the applicant subsequent to imposition of the bar to prepare for his or her return to the securities business; and (8) Any other information material to the application.

17 C.F.R. § 201.193(d). These factors are "specifically required by the rule." Preliminary Note to 17 C.F.R. § 201.193. In addition, the Commission will also "consider the nature of the findings that resulted in the bar." Preliminary Note to 17 C.F.R. § 201.193. Finally, to show that an application is "consistent with the public interest, the application and supporting documentation *must* demonstrate that the proposed supervision, procedures, or terms and conditions of employment are reasonably designed to prevent a recurrence of the conduct that led to imposition of the bar." *Id.* (emphasis added).

Graham argues that the Commission wrongfully denied his Rule 193 application based solely on the fact that he did not propose a specific employer. While it is true that the Commission's order predominantly focused on Graham's failure to specify such an employer, this was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An applicant's supervision upon returning to the securities industry is a concern accentuated in the Preliminary Note to 17 C.F.R. § 201.193, explicitly required by two of the factors in 17 C.F.R. § 201.193(d), and supported by the Commission's precedent.

5

First, the Preliminary Note to 17 C.F.R. § 201.193 stresses that "[t]he nature of the supervision" of an applicant's involvement in the securities industry "is an important matter." Preliminary Note to 17 C.F.R. § 201.193. Applicants bear the burden of showing they will be adequately supervised. *Id.* Moreover, the Preliminary Note highlights the requirement of 17 C.F.R. § 201.193(d)(6), stressing the need for an applicant's proposed supervision to "prevent a recurrence of the conduct that led to the imposition of the bar." *Id.*

Second, the rule itself states that applicants "shall" submit an affidavit that addresses the "capacity or position" the applicant will hold, 17 C.F.R. § 201.193(d)(5), as well as the "supervision to be exercised over such applicant," 17 C.F.R. § 201.193(d)(6). These factors particularly allow the Commission to assess whether it is in the public interest to permit an applicant back into the securities industry. Graham, however, only addressed his re-entry in broad terms. He did not discuss in any meaningful detail how he would be supervised; instead, he stated that *he* "will assure that [any investment adviser he works with] employs or otherwise engages a person responsible for compliance with the securities laws." J. App'x at 218.

Finally, the Commission's decision is consistent with its precedent. Recently, the Commission rejected an application that was strikingly similar to Graham's. *See In the Matter of Eric David Wanger*, Exchange Act Release No. 81111, 2017 WL 2953369 (July 10, 2017). In *Wanger*, the Commission denied relief because the

6

applicant did not "identify a proposed employer, the terms and conditions of his planned employment, or the supervision, if any, that would be exercised over him in his new position." *Id.* at *3. Here, Graham's application similarly did not provide any information about who he would work for, and it did not indicate that he would be supervised. The Commission, therefore, did not have enough information to properly decide if removing the sanction would be in the public interest -- the overarching concern of 17 C.F.R. § 201.193.

Accordingly, the Commission reasonably denied Graham's Rule 193 application.

## B. The Rule 506 Application

For essentially the same reasons, the Commission's denial of Graham's Rule 506 motion was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As Graham acknowledges, the Rule 506 motion "has (to some extent) been superseded by [the] Rule 193 Application." Petitioner's Br. at 40. Moreover, the Commission only modifies bar orders in "compelling circumstances," *In the Matter of Ciro Cozzolino*, Exchange Act Release No. 49001, 2003 WL 23094746 at *3 (Dec. 29, 2003), which is a more stringent standard than the one applied to consent orders. The Commission's decision to deny Graham's Rule 506 application, which was filed before two years had elapsed, was reasonable.

7

## II.      Graham's Indefinite Bar

We review Commission sanctions for abuse of discretion, focusing on the particular facts of the case. *McCarthy v. S.E.C.*, 406 F.3d 179, 188 (2d Cir. 2005); *see also Mathis*, 671 F.3d at 216 ("We will not disturb the SEC's choice of sanction unless it is unwarranted in law or without justification in fact." (internal quotation marks and citations omitted)). A sanction will be overturned only when it is "palpably disproportionate to the violation" or unsupported by reason. *McCarthy*, 406 F.3d at 188. Comparing cases is of "limited benefit" because sanctions are "highly fact-dependent." *Id.* Because Commission sanctions are remedial and not penal, the "foremost consideration" is whether the "sanction protects the trading public from further harm." *Id.*

Graham contends that his indefinite bar from the securities industry is excessive. The Commission disagrees.[1] The Commission based its decision to bar Graham from the industry based on six instances of misconduct, which included using inside information to bid on securities in auctions that *he* was running, by covertly employing third-party brokers. He also tipped off another bidder to cut its bid in half, telling the bidder "remember me." J. App'x at 207. When Graham moved for consent to

---

[1]      Additionally, the Commission argues Graham forfeited his right to challenge the Bar Order when he consented to it and that he failed to file a timely challenge. Graham, however, contends he consented to a temporary ban when he signed the settlement agreement, not an indefinite one. While the language of the agreement supports the Commission's reading, *see* J. App'x at 36-37, we need not to resolve these issues.

associate, he failed to comply with all the requirements set forth in 17 C.F.R. § 201.193 and did not show that his "proposed association would be consistent with the public interest," and so the Commission denied his application. S. App'x at 3. In light of Graham's conduct and incomplete application, it is difficult to classify the Commission's continued sanction as excessive or an abuse of discretion. This is especially true considering that Graham is entitled to reapply and can modify his application to include an explanation of how he will be supervised. Accordingly, we conclude that the Commission's sanction is not excessive.

\* \* \*

We have considered Graham's remaining arguments and conclude they are without merit. For the foregoing reasons, we **DENY** the petitions for review.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9