# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 16, 2006         Decided July 20, 2007

No. 05-1467

PAZ SECURITIES, INC. AND
JOSEPH MIZRACHI,
PETITIONERS

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

On Petition for Review of an Order of the
Securities and Exchange Commission

*David Clarke, Jr.* argued the cause for petitioners. With him on the briefs was *Deborah R. Meshulam*.

*Michael A. Conley*, Senior Special Counsel, argued the cause for respondent. With him on the brief were *Brian G. Cartwright*, General Counsel, *Jacob H. Stillman*, Solicitor, and *Susan K. Straus*, Attorney.

Before: GINSBURG, *Chief Judge*, and ROGERS and KAVANAUGH, *Circuit Judges*.

Opinion for the Court by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: PAZ Securities, Inc. and its president, Joseph Mizrachi, petition for review of an order of the Securities and Exchange Commission sustaining the decision of the National Association of Securities Dealers to expel PAZ from membership and to bar Mizrachi from ever associating with any NASD member firm as sanctions for Mizrachi's failure to respond to the NASD's repeated requests for information from and about PAZ. We hold the Commission abused its discretion in two ways: (1) it failed to address certain mitigating factors raised by the petitioners, specifically, that their failure to respond had no potential either to injure the investing public or to benefit themselves monetarily nor did the information requested relate to conduct potentially injurious to the public or beneficial to themselves; and (2) it did not identify any remedial — as opposed to punitive — purpose for the sanctions it approved. Accordingly, we grant the petition and remand this matter for the Commission to consider anew whether the sanctions are excessive or oppressive in light of the factors raised in mitigation and to consider for the first time whether the sanctions serve a remedial purpose, as required by § 19(e)(2) of the Securities Exchange Act of 1934, 15 U.S.C. § 78s(e)(2).

## I. Background

Joseph Mizrachi was the president of PAZ Securities, Inc., which was a member of the NASD, a "self-regulatory organization" registered with the Commission as a "national securities association" under Section 15A of the Securities Exchange Act of 1934, 15 U.S.C. § 78o-3. The NASD adopts rules to regulate the conduct of its members, § 15A(b)(3)-(7), and may enforce those rules by imposing disciplinary sanctions upon member firms and persons associated with them, § 15A(b)(8)-(9).

In February 2003 the NASD began a routine on-site

examination of PAZ and reviewed materials provided by Joseph Mizrachi's brother, Simon Mizrachi, in his capacity as vice president of the firm. Joseph Mizrachi claims he was unavailable at that time to respond to the NASD because he was experiencing mental distress caused by marital difficulties and was traveling abroad. Unable to obtain through Simon Mizrachi everything it sought from PAZ, the NASD asked Joseph Mizrachi and PAZ to provide additional written information. Specifically, the NASD sent three letters to the petitioners asking whether PAZ had implemented a continuing education program; what investment banking or securities business the firm had engaged in since February 2001; what specific duties PAZ had assigned to, and what compensation PAZ had paid to, certain individuals during the period 2000-2002; whether PAZ had revised its written supervisory procedures as requested (apparently by the NASD); why the NASD had not received the firm's 2001 audit on time; and whether PAZ had a written expense sharing agreement with a company operated by Simon Mizrachi that shared office space with PAZ.

The NASD sent the first letter on May 6, 2003 by overnight courier to Joseph Mizrachi at the address listed for PAZ in the NASD's Central Registration Depository (CRD). On May 20, 2003 the NASD sent a second letter by express courier to the same address requesting the same information. On July 23, 2003 it sent a third letter by first class and certified mail to the address listed in the CRD for each petitioner. The return receipts show that one "C.J. Mizrachi" signed for the letter sent to PAZ's registered address, but the return receipt card sent to Joseph Mizrachi's home address bears an illegible signature. Joseph Mizrachi asserted before the Commission that he is not C.J. Mizrachi, and C.J. Mizrachi is not further identified in the record.

The petitioners do not contest that the NASD's efforts to

notify them comply with NASD Procedural Rule 9134, which provides the NASD may send documents by first class mail, certified mail, or courier to the address listed in the CRD. Under NASD Procedural Rule 8210(d), a member of the NASD or person to whom a request for information is directed is deemed to have received that request when it is sent to the last known business address of the member firm or the last known residential address of a person associated with the firm, as reflected in the CRD. Therefore, the petitioners had constructive, if not actual notice of the three letters requesting information from PAZ.

On August 14, 2003 the NASD Department of Enforcement filed with the NASD Office of Hearing Officers a complaint alleging the petitioners had failed to respond to a request for information, in violation of NASD Conduct Rule 2110 and NASD Procedural Rule 8210. The Department of Enforcement simultaneously sent by first class and certified mail a Notice of Complaint, with the complaint attached, to the addresses listed in the CRD for PAZ and for Joseph Mizrachi. The Department repeated this drill on September 12, 2003. Though the record is unclear whether Joseph Mizrachi received either of the Notices, he admitted that Simon Mizrachi told him about the complaint, apparently no later than October 2003.

In September 2003 Simon Mizrachi hired Douglas Westendorf, Esq. to represent the petitioners before the NASD. Pursuant to a motion Westendorf filed on September 26, the NASD gave the petitioners until October 20 to answer the complaint. The petitioners, however, still failed to answer the complaint, and on October 28 the NASD Hearing Officer found them in default. In November the Department of Enforcement moved for entry of a default decision and served the motion upon the petitioners and Westendorf. On December 31 the NASD Hearing Officer entered a default decision against the

petitioners, expelling PAZ from membership in the NASD and barring Joseph Mizrachi from ever associating with any NASD member firm, the "standard" sanctions — absent mitigating circumstances — recommended in the NASD Sanction Guidelines (at 35).

On January 23, 2004 the petitioners belatedly responded to the NASD's request for information and moved to vacate the default decision. In that motion, Joseph Mizrachi explained that from January to August 2003 he had been traveling abroad to visit family and to deal with emotional distress, for which he had received counseling; from August 2003 to January 2004 he claimed he had been traveling extensively for business. Joseph Mizrachi claimed he and PAZ had relied upon Westendorf to represent them and attributed their failure to respond to the negligence of the attorney. The NASD Hearing Officer denied the motion to vacate the default decision because the petitioners had presented no evidence that their failure to respond was attributable to negligence by Westendorf and therefore failed to show good cause to vacate the default decision.

The petitioners appealed to the NASD's National Adjudicatory Council (NAC), arguing the sanctions imposed by the Hearing Officer were unduly severe and should be reduced upon the basis of three mitigating factors: (1) the petitioners' misplaced reliance upon counsel to respond to the complaint; (2) the unintentional nature of their failure to respond; and (3) the nature of the information requested, which did not involve any potential monetary gain to either of them. The NAC affirmed the default decision, the sanctions, and the Hearing Officer's refusal to vacate the default decision. It found the petitioners' failure to respond to the NASD's requests for information were not mitigated by the enumerated factors because Joseph Mizrachi had at least constructive notice of the repeated requests for information and the petitioners' failure to respond was

"tantamount to stonewalling and a willful refusal to comply," which had "undermined" the NASD's ability to fulfil its regulatory responsibilities. The NAC did not respond to the petitioners' contention that their failure to respond was mitigated because the information requested did not relate to any potential monetary gain to them, except to say, "We have considered and rejected without discussion all other arguments of the parties."

Before the Commission, the petitioners argued the sanctions should be reduced because their failure to respond to the NASD's information requests (1) was unintentional (Principal Consideration No. 13, NASD Sanction Guidelines at 7); (2) did not injure the investing public (Principal Consideration No.10, NASD Sanction Guidelines at 6), nor did the information requested relate to injurious conduct (violation-specific Principal Consideration No. 1, NASD Sanction Guidelines at 35); (3) did not stand to benefit them monetarily (Principal Consideration No. 17, NASD Sanction Guidelines at 7), nor did the information requested relate to conduct of benefit to them (violation-specific Principal Consideration No. 1, NASD Sanction Guidelines at 35); and (4) was attributable to their reliance upon counsel to respond to the complaint (Principal Consideration No. 7, NASD Sanction Guidelines at 6). The Commission first determined that Joseph Mizrachi actually knew about the requests for information by September 2003 but neither contacted the NASD nor delegated that task to another, which undermined the petitioners' claim that their failure to respond was unintentional. Next, the Commission rejected the petitioners' contention that they reasonably relied upon counsel because Joseph Mizrachi apparently neither followed up with Westendorf about filing an answer to the complaint nor asked anyone to keep him updated on the matter. Finally, in response to the petitioners' suggestion that the nature of the information requested mitigated their failure to respond, the Commission

said the "NASD's requests were not as limited as [the petitioners] contend"; they concerned generally "the nature of PAZ's investment banking and securities activities [and, more specifically,] the duties and responsibilities of certain individuals, and whether the firm had a written agreement regarding shared expenses." Moreover, "Even if the requests had been limited" member firms and persons associated with them "cannot second-guess NASD's requests" because the "NASD has a right to request information and require cooperation." The Commission emphasized the "importance of complying with NASD's information requests" because "[w]hen members and associated persons delay their responses to requests for information, they impede the ability of NASD to conduct its investigations." Because the petitioners had received the standard sanction under the NASD Guidelines for failure to respond to a request for information, and because the Commission found that failure was unmitigated, the Commission held the sanctions were neither excessive nor oppressive.

## II. Analysis

The petitioners argue the Commission abused its discretion by affirming sanctions grossly disproportionate to their conduct without considering certain mitigating factors and without articulating a remedial rather than a punitive purpose for the sanctions. Specifically, they contend the Commission did not evaluate whether their failure to respond to the NASD's requests for information was mitigated because (1) it did not result in any injury to the investing public (Principal Consideration No. 11, NASD Sanction Guidelines at 6), (2) it did not have the potential to benefit either of them monetarily (Principal Consideration No. 17, NASD Sanction Guidelines at 7), and (3) the information requested related to conduct neither potentially injurious to the investing public nor potentially beneficial to

themselves (violation-specific Principal Consideration No. 1, NASD Sanction Guidelines at 35).

The Commission responds that it may review a sanction only to determine whether it is excessive or oppressive and may not determine de novo whether it is otherwise appropriate. *See Krull v. SEC*, 248 F.3d 907, 911 (9th Cir. 2001) ("Although the Commission reviews the record de novo, its review of the sanction is narrower — the sanction may be modified or canceled only if it is 'excessive or oppressive'"). The Commission emphasizes that the NASD Sanction Guidelines, which absent mitigating circumstances call for the expulsion of a member firm and the lifetime bar of an associated person for failure to respond to a request for information, show the sanctions imposed are not "grossly disproportionate." The Commission also asserts it considered each of the mitigating factors raised before it, and it may not now be faulted for failing to consider mitigating factors the petitioners did not raise before it.

Pursuant to § 19(e) of the Securities Exchange Act of 1934[*],

---

[*] Section 19(e), 15 U.S.C. § 78s(e), provides:

> (1) In any proceeding to review a final disciplinary sanction imposed by a self-regulatory organization ... —

>> (A) if the [Commission] ... finds that such member, participant, or person associated with a member has ... omitted such acts, as the self-regulatory organization has found him to have ... omitted, that such ... omissions to act, are in violation of ... the rules of the self-regulatory organization ... and that such provisions are, and were applied in a manner, consistent with the purposes of this chapter, [then the Commission,] by order, shall so declare and, as

the Commission is to review de novo a disciplinary sanction imposed by the NASD upon a member firm or a person associated therewith to determine whether the sanction "imposes any burden on competition not necessary or appropriate" to further the purposes of the Act, or is "excessive or oppressive." *See Otto v. SEC*, 253 F.3d 960, 964, 966-67 (7th Cir. 2001) ("the SEC conducts de novo review of the NASD's sanctions"). When evaluating whether a sanction imposed by the NASD is excessive or oppressive, as we have stated before, "the Commission must do more than say, in effect, petitioners are bad and must be punished," *Blinder, Robinson & Co., v. SEC*, 837 F.2d 1099, 1113 (D.C. Cir. 1988); at the least it must give "[s]ome explanation addressing the nature of the violation and

appropriate, affirm the sanction imposed by the self-regulatory organization, modify the sanction in accordance with paragraph (2) of this subsection, or remand to the self-regulatory organization for further proceedings; or

(B) if [the Commission] does not make any such finding it shall, by order, set aside the sanction imposed by the self-regulatory organization and, if appropriate, remand to the self-regulatory organization for further proceedings.

(2) If the [Commission] ... having due regard for the public interest and the protection of investors, finds after a proceeding in accordance with paragraph (1) of this subsection that a sanction imposed by a self-regulatory organization upon such member, participant, or person associated with a member imposes any burden on competition not necessary or appropriate in furtherance of the purposes of this chapter or is excessive or oppressive, [then the Commission] may cancel, reduce, or require the remission of such sanction.

the mitigating factors presented in the record." *McCarthy v. SEC*, 406 F.3d 179, 189-90 (2d Cir. 2005) (reviewing Commission decision affirming sanctions imposed by New York Stock Exchange, a self-regulatory organization). The Commission must be particularly careful to address potentially mitigating factors before it affirms an order expelling a member from the NASD or barring an individual from associating with an NASD member firm — the securities industry equivalent of capital punishment. *Cf. Steadman v. SEC*, 603 F.2d 1126, 1137-40 (5th Cir. 1979) ("when the Commission chooses to order the most drastic remedies at its disposal, it has a greater burden to show with particularity the facts and policies that support those sanctions and why less severe action would not serve to protect investors"), *aff'd on other grounds*, 450 U.S. 91 (1981).

In this case the petitioners claim the Commission failed to address several mitigating factors. Insofar as the petitioners claim the Commission should have considered their previously clean disciplinary record and that they did not attempt either to mislead anyone or to conceal their present misconduct, their arguments are forfeit because the petitioners did not raise them before the Commission. 15 U.S.C. § 78y(c)(1). Insofar as the petitioners preserved other claims, however, they are on solid ground.

In the course of emphasizing in its decision the petitioners' obligation to respond to the NASD's requests for information (the "NASD has a right to request information and require cooperation from those persons it investigates"), the Commission mischaracterized the petitioners' argument, saying they "suggest[ed] that the information requests were not important because they focused on PAZ's supervisory procedures." In fact, their argument was not that the information sought was unimportant but rather that their failure to respond to the NASD (1) was of no potential monetary

benefit to them and (2) did not result in any injury to the investing public, and that (3) the information requested did not relate to injurious conduct or conduct of potential monetary benefit to them.

In addition, pursuant to Section 19 of the Act, the Commission was obliged — but failed — to review the sanction imposed by the NASD with "due regard for the public interest and the protection of investors." 15 U.S.C. § 78s(e)(2). As the Second Circuit explained in *Wright v. SEC*, 112 F.2d 89, 94 (2d Cir. 1940), that provision "authorizes [the Commission to order] expulsion not as a penalty but as a means of protecting investors .... The purpose of the order is remedial, not penal."[*] If the Commission upholds the sanctions as remedial, then it must explain why; furthermore, "as the circumstances in a case suggesting that a sanction is excessive and inappropriately punitive become more evident, the Commission must provide a more detailed explanation linking the sanction imposed to those circumstances if it wishes to uphold the sanction." *McCarthy*, 406 F.3d at 190; *see also Occidental Petrol. Corp. v. SEC*, 873 F.2d 325, 338 (D.C. Cir. 1989) ("in order to allow for

---

[*] When *Wright* was decided, Section 19 authorized the Commission itself "for the protection of investors ... to expel from a national securities exchange any member or officer thereof" for certain violations of the statute or of the rules and regulations thereunder. Securities Exchange Act of 1934, Pub. L. No. 73-291, § 19(a)(3), 48 Stat. 881, 898-99 (codified at 15 U.S.C. § 78s(a)(3) (1940)). Although the statute now calls for the sanction to be imposed in the first instance by a self-regulatory organization, subject to review by the Commission, that procedural change does not dilute the substantive requirement that the sanction be remedial rather than punitive. *See* § 19(e)(2); *McCarthy*, 406 F.3d at 189-91 (holding Commission abused its discretion by affirming exchange decision suspending broker from membership without determining sanction was necessary to protect investors).

meaningful judicial review, the agency must produce an administrative record that delineates the path by which it reached its decision"). We do not suggest the Commission must make an on-the-record finding that a sanction is remedial, but it must explain why imposing the most severe, and therefore apparently punitive sanction is, in fact, remedial, particularly in light of the mitigating factors brought to its attention.

The Commission did state its view that the sanctions here imposed by the NASD would "serve as a deterrent to others who may be inclined to ignore NASD's information requests," but such "general deterrence" is essentially a rationale for punishment, not for remediation. *Cf. Republic Steel Corp. v. NLRB*, 311 U.S. 7, 12 (1940) ("it is not enough to justify the [National Labor Relations] Board's requirements [of an employer] to say that they would have the effect of deterring persons from violating the [National Labor Relations] Act" because the Board's power "is remedial, not punitive"); *United States v. Bajakajian*, 524 U.S. 321, 329 (1998) ("Deterrence ... has traditionally been viewed as a goal of punishment"). Still, we agree with the Second Circuit that, "[a]lthough general deterrence is not, by itself, sufficient justification for expulsion or suspension ... it may be considered as part of the overall remedial inquiry." *McCarthy*, 406 F.3d at 189. Here, however, general deterrence was not considered as part of a larger remedial inquiry; the Commission offered no other rationale whatsoever. It simply held the sanctions were not excessive or oppressive because the NASD had a right to the requested information, the petitioners' failure to respond was not unintentional, and Joseph Mizrachi's depression was not so severe in August 2003 that he could not resume taking care of business. Nowhere did the Commission advert to any purpose other than "deterr[ing] others who may be inclined to ignore NASD's information requests." Therefore, the Commission did not adequately explain why the sanctions the NASD imposed

upon the petitioners were not punitive rather than remedial.

### III.  Conclusion

The Commission abused its discretion by failing to address certain mitigating factors the petitioners raised before it and by affirming the severe sanctions imposed upon them by the NASD without first determining those sanctions were remedial rather than punitive.  The petition for review is therefore granted and the case is remanded to the Commission for further proceedings consistent herewith.

*So ordered.*