[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 16, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15736
Non-Argument Calendar

_____

Agency No. 3-12529

MORTON BRUCE ERENSTEIN,

Petitioner,

versus

SECURITIES AND EXCHANGE COMMISSION,

Respondent.

_____

Petition for Review of a Decision of the
Securities and Exchange Commission

_____

**(September 16, 2008)**

Before BIRCH, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

Morton Bruce Erenstein, proceeding pro se, petitions for review of a final

disciplinary order of the Securities and Exchange Commission ("SEC") affirming a decision of the National Association of Securities Dealers ("NASD"), which found that, as a securities dealer or associated person, he had violated two regulatory rules and should be suspended for a period of one year.

Liberally construing his brief, Erenstein argues that his suspension constituted an abuse of discretion as substantial evidence did not support the SEC's finding that he violated the rules. Because Erenstein also challenges certain administrative decisions by the NASD or NAC, and suggests that the NASD Panel's failure to issue a decision within 60 days of the last post-hearing filing mandated dismissal of the charges, we also examine whether de novo review by the SEC of intermediate agency determinations rendered harmless any factual or legal errors at those stages. Finally, Erenstein also argues that his right to due process was violated during agency proceedings and that he was entitled to have his counsel's objections heard by an independent arbiter before the commencement of disciplinary proceedings.

I.

The issues on appeal stem from a complaint filed with the NASD against Erenstein by a former client. She alleged that he had converted $10,000 provided to him for investment purposes. During an on-the-record interview by the NASD,

2

with counsel present, Erenstein indicated that the money constituted compensation for services he provided to the customer involving the sale of government bonds. However, when asked whether he had declared the $10,000 as income on his 1998, 1999, or 2000 tax returns, Erenstein's counsel objected on relevancy grounds and instructed him not to answer. Although NASD staff informed Erenstein that they had the authority to seek this information under NASD Procedural Rule 8210, and that failure to respond could result in disciplinary action, under that rule and NASD Conduct Rule 2110, Erenstein indicated his understanding, but still refused to answer based on advice of counsel.

After some correspondence, during which counsel persisted with the objection, NASD officials notified Erenstein in June 2004 that disciplinary action would be recommended based on his failure to answer the on-the-record interview question and respond to the written requests for tax records. In a June 21, 2004, letter, Erenstein indicated that his 1998 federal tax return was being produced under protest and no previous objection was being waived. The letter indicated that an amended 1998 return had been filed in October 2003 to reflect the $10,000 income because Erenstein had initially overlooked the amount. Erenstein contended that no adjudicatory forum existed in which to seek review of the request for confidential documents, creating a due process issue and also an issue

3

of whether the NASD complied with the statutory requirement that it provide a fair and reasonable procedure for determining disciplinary matters.

A disciplinary hearing was held in December 2004, at which NASD's Department of Enforcement ("Department") sought a one-year suspension. In May 2005, before a decision, Erenstein filed for bankruptcy. In November 2005, the Department moved for issuance of a decision without monetary sanctions, i.e., a one-year suspension, noting that the Bankruptcy Court had granted Erenstein a discharge.

In December 2005, the NASD Hearing Panel ("Panel") issued a decision barring Erenstein for violating NASD Procedural Rule 8210 and Conduct Rule 2110 by refusing to answer an on-the-record interview question and failing to respond to a written request for information until being notified that disciplinary charges would be filed. After noting - erroneously - that the Department had requested a bar, the Panel found that, under agency guidelines, a bar is appropriate where the individual did not respond in any manner, while up to a two-year suspension is appropriate where mitigation exists or the person did not respond in a timely manner.

Erenstein's counsel sought reconsideration from the Panel, stating that the Department had requested only a one-year suspension, not a bar. Although the

Panel issued a corrected decision, the sanction remained a bar.

Erenstein administratively appealed to the National Adjudicatory Council ("NAC") of the NASD, which reduced the sanction to a one-year suspension. Erenstein then appealed to the SEC, which, in a November 14, 2007, corrected opinion, affirmed the NAC's findings of violations and the reduced sanction, noting that it had independently reviewed the record. The SEC also rejected Erenstein's argument that Panel error had infected the proceedings. The SEC determined that even if the relevance of the tax return was not explained during the conversation, the relevance was patent from the context of the questions during the on-the-record interview. The SEC found that the essential facts establishing the violation of Rule 8210 were not disputed, and that NASD staff determines the relevancy of a requested record, which they need not explain.

Erenstein then filed a timely petition for review.

A.

Congress enacted the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78a, et seq., to provide for the regulation of securities exchanges and over-the-counter markets to prevent unfair practices. See Peoples Securities Co. v. Securities and Exchange Co., 289 F.2d 268, 270 (5th Cir. 1961) (quotation marks

5

omitted).[1]  Section 15, in particular, regulates the over-the-counter market and

requires dealers engaged in securities transactions to register with the SEC.  Id.

Section 15(b) provides that the SEC shall deny registration to a dealer if it finds

that such denial is in the public interest and that the dealer has willfully violated

any provision of certain federal securities laws, or of any rule under them.  Id.

Section 15A of the Exchange Act, 15 U.S.C. § 78o-3, enacted in 1938 and

generally known as the Maloney Act, creates a medium for self-regulation of

over-the-counter dealers.  See id.; Karsner v. Lothian, 532 F.3d 876, 880 (D.C. Cir.

2008).  This section authorized the formation of national securities associations,

such as the NASD, for the purpose of supervising conduct of registered members.

Peoples Securities, 289 F.2d at 270; see also U.S. S.E.C. v. Vittor, 323 F.3d 930,

934 (11th Cir. 2003) (NASD is a self-regulatory organization).

In discharging this responsibility, the NASD is authorized to promulgate

rules and sanction any registered members who violate them.  Krull v. S.E.C., 248

F.3d 907, 910 (9th Cir. 2001).  The SEC has jurisdiction to review and enforce

disciplinary actions of the NASD.  Alderman v. S.E.C., 104 F.3d 285, 287 n.3 (9th

Cir. 1997).  A disciplined member may appeal to the SEC.  Jones v. S.E.C., 115

---

[1] Decisions of the Fifth Circuit, handed down prior to close of business on September 30, 1981, are binding precedent.  Bonner v. City of Prichard, 661 F.2d 1206, 1209-10 (11th Cir. 1981) (en banc).

F.3d 1173, 1179 (4th Cir. 1997). If the dealer is unsuccessful in this respect, he may file a petition for review of such order in a federal circuit court of appeals. 15 U.S.C. § 78y(a).

On review, however, we will "affirm the SEC's factual findings if they are supported by substantial evidence." Sheldon v. S.E.C., 45 F.3d 1515, 1517 (11th Cir. 1995); 15 U.S.C. § 78y(a)(4). We conduct a de novo review of the SEC's legal conclusions. Orkin v. S.E.C., 31 F.3d 1056, 1063 (11th Cir. 1994).

Under NASD rules, Association staff have the right to:

(1)    require a member . . . to provide information orally, in writing, or electronically . . . and to testify at a location specified by Association staff . . . with respect to any matter involved in the investigation, complaint, examination, or proceeding; and

(2)    inspect and copy the books, records, and accounts of such member or person with respect to any matter involved in the investigation, complaint, examination, or proceeding.

NASD Procedural Rule 8210(a). "No member . . . shall fail to provide information or testimony or to permit an inspection and copying of books, records, or accounts pursuant to this Rule." NASD Procedural Rule 8210(c). Under NASD Conduct Rule 2110, "[a] member, in the conduct of its business, shall observe the high standards of commercial honor and just and equitable principles of trade."

Courts will defer to an agency's reasonable interpretation of its own regulations. Federal Exp. Corp. v. Holowecki, — U.S. —, 128 S.Ct. 1147, 1155,

7

170 L.Ed.2d 10 (2008). The SEC has held that although NASD procedural rules permit counsel to participate, no constitutional or statutory right to counsel exists in NASD disciplinary proceedings. Sundra Escott-Russell, Exchange Act Release No. 43,363, 54 S.E.C. 867, 874 n.18 (Sept. 27, 2000). Reliance on counsel is also immaterial to the obligation of an associated person to supply information upon request of the NASD. Id. at 872-73.

We have not previously analyzed the SEC's affirmance of the NASD's imposition of sanctions for violations of Rules 8210 and 2110, and very few federal appellate court decisions have analyzed the scope of the NASD's authority to request documents. See, e.g., PAZ Securities, Inc. v. S.E.C., 494 F.3d 1059 (D.C. Cir. 2007) (holding that SEC abused its discretion by failing to address mitigating factors and not identifying remedial purpose for bar where petitioner failed to respond to NASD's repeated requests for information); Rooms v. S.E.C., 444 F.3d 1208 (10th Cir. 2006)(noting SEC's holding that Rule 8210 was not violated, discussing sanctions under Rule 2110, and holding that complaint which alleged violation of rules gave sufficient warning of prohibited conduct to satisfy due process). Nevertheless, in civil cases, we have not required a showing of compelling need before tax information may be obtained by a party in discovery, but instead have determined that such information need be only arguably relevant.

8

See Maddow v. Proctor & Gamble Co., Inc., 107 F.3d 846, 853 (11th Cir. 1997) (affirming district court's decision compelling discovery in ADEA civil suit, but reversing award of attorney's fees because "plaintiffs were substantially justified in initially refusing discovery").

Here, Erenstein did not dispute the validity of the NASD's original efforts to investigate a client's charge of impropriety, although he did argue that the information had been provided through alternative means. Although Erenstein challenges the relevance of the returns themselves, whether he himself identified the $10,000 as income at the time of receipt was probative because it showed whether he asserted ownership over the funds at that time, consistent with his later explanation that the sum represented a fee earned, and not funds entrusted to him for investment. Erenstein also did not dispute the essence of the NASD charges - that he failed to respond to a question during the October 2003 interview and later refused to comply with the request for the returns. Instead, he asserted a defense of justification based on (i) lack of relevance, and (ii) reliance on contrary advice of counsel. To the extent the SEC rejected the former, that decision is factually and legally supported. To the extent it rejected the latter, Erenstein cited no authority to NASD staff, the Department, the Panel, the NAC, or to the SEC to show that advice of counsel constituted a legal defense, and, as noted above, the SEC relied

9

on prior agency determinations to the contrary, and this reliance is entitled to deference. Accordingly, we conclude that substantial evidence supports the SEC's factual finding that the rules were violated, and that rejection of Erenstein's "advice of counsel" defense was neither contrary to law nor an abuse of the agency's discretion.

B.

The SEC may not overturn NASD-imposed sanctions unless it finds the sanctions to be "excessive or oppressive" or if they impose an unnecessary or inappropriate burden on competition. 15 U.S.C. § 78s(e)(2). We, in turn, will not "overturn the SEC's decision to impose a particular sanction [unless we find] a gross abuse of discretion." Orkin, 31 F.3d at 1066. This "standard recognizes there is a range of choices within which we will not reverse the district court even if we might have reached a different decision." Siebert v. Allen, 506 F.3d 1047, 1049 n.2 (11th Cir. 2007) (42 U.S.C. § 1983 suit); see also Anderson v. Cagle's, Inc., 488 F.3d 945, 953-54 (11th Cir. 2007) (district court did not abuse its discretion by decertifying a collective action alleging violations of the Fair Labor Standards Act).

Because registration of broker-dealers is a means of protecting the public, the determination of the sanctions necessary to protect the public rests primarily

within the competence of the SEC. Tager v. Securities and Exchange Commission, 344 F.2d 5, 9 (2d Cir. 1965) (persuasive). "Where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy, the relation of remedy to policy is peculiarly a matter for administrative competence." Id. (quotation marks and internal quotation marks omitted). The SEC has a "very large measure of discretion" in determining what sanctions to impose at a particular time in particular cases and, failing a gross abuse of discretion, an appellate court will not substitute its view as to what sanctions will best accord with the regulatory powers of the Commission, or otherwise adopt "a grudging interpretation of . . . legislation." See id.; Whiteside & Co. v. S.E.C., 557 F.2d 1118, 1120 (5th Cir. 1977) (internal citation omitted).

NASD Sanction Guidelines in effect in 2007 stated that, in determining sanctions for violations of Rules 8210 and 2110, the nature of the information requested should be considered, as should whether the information was provided, the number of requests made, the time taken to respond, and the degree of regulatory pressure required to obtain a response. The guidelines provided that a failure to respond in any manner should be punished by a bar and a fine of $25,000 to $50,000. Where an individual fails to respond in a timely manner or mitigation exists, the individual should be suspended for up to two years and should be fined

11

between $2,500 and $25,000.

The sanction guidelines, however, are not rigid and mechanical and serve only as a starting point for determining the proper disciplinary action. Otto v. S.E.C., 253 F.3d 960, 967 (7th Cir. 2001). To the extent this issue is raised by Erenstein on appeal, we find that the one-year suspension was not a gross abuse of discretion for several reasons. First, the penalty was not at the high end of the applicable Sanction Guidelines. Second, a one-year suspension was in the range of reasonable choices, considering that Erenstein submitted the requested information only after repeated demands by the NASD. Third, it is critically important to the self-regulatory system that members and associated persons cooperate with NASD investigations, especially because the NASD lacks subpoena power. Thus, the SEC did not grossly abuse its discretion when it sustained Erenstein's one-year suspension.

C.

Although we have not specifically addressed in a published opinion whether the SEC's independent review of an NASD Panel's decision cures any panel error, other Circuits have so found. See, e.g., McCarthy v. S.E.C., 406 F.3d 179, 187 (2d Cir. 2005) (persuasive) (SEC reached an independent decision not infected by any defect in New York Stock Exchange Board's determination); Schellenbach v.

S.E.C., 989 F.2d 907, 912-13 (7th Cir. 1993) (persuasive) (SEC's independent review rendered attacks on NASD staff's conduct irrelevant where SEC's action was not infected by NASD proceedings).

Under NASD Procedural Rule 9268(a), "[w]ithin 60 days after the final date allowed for filing proposed findings of fact, conclusions of law, and post-hearing briefs, or by a date established at the discretion of the Chief Hearing Officer, the Officer shall prepare a written decision that reflects the views of the Hearing Panel . . . ." Within 65 days after the final date, a written dissent may be prepared. NASD Procedural Rule 9268(c). The decision shall be promptly served on the parties. NASD Procedural Rule 9268(d).

We do not find reversible error. First, Erenstein has not cited any caselaw for the proposition that the Panel's failure to issue a decision within 60 days of the last post-hearing filing mandated dismissal of the charges. Second, any error by the Panel was cured by the SEC's review and did not infect subsequent proceedings because, inter alia, in affirming, the SEC noted that it independently reviewed the record. Accordingly, we deny the petition with respect to this issue.

D.

We review de novo constitutional claims, including claims of due process violations. See Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006)

13

(immigration context).

We have not yet determined whether the NASD is a state actor subject to due process requirements. Some courts have answered this question in the affirmative. See, e.g., Rooms, 444 F.3d at 1214 (10th Cir. 2006) (finding that due process applied to NASD, but rejecting due process argument where petitioner had fair notice that his conduct violated NASD Rule 2110). Other courts have determined that the NASD is not a state actor subject to due process requirements. See, e.g., D'Alessio v. S.E.C., 380 F.3d 112, 120 n.12 (2d Cir. 2004). In one rule-making dispute involving the NASD, this court reversed a grant of summary judgment and remanded a case for a determination of, among other things, whether, by applying the challenged rule in a retroactive fashion, the NASD afforded due process to the plaintiffs administratively. Harwell v. Growth Programs, Inc., 451 F.2d 240, 245 (5th Cir. 1971), modified on denial of rehearing, 459 F.2d 461 (5th Cir. 1972).

To the extent due process applies, a fundamental requirement is the opportunity to be heard at a meaningful time and in a meaningful manner. Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). "The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct.

14

2963, 2976, 41 L.Ed.2d 935 (1974). Some hearing is required before an individual is finally deprived of a property interest. Id. at 557-58, 94 S.Ct. at 2975. This requirement applies to the revocation of licenses. Id. at 558, 94 S.Ct. at 2976.

> [W]hen governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used.

Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514-15, 4 L.Ed.2d 1307 (1960).

We assume, for the limited purpose of deciding this appeal, that the NASD could be a governmental actor, that the full range of due process rights apply during its disciplinary proceedings, and that any actions by that entity are subject to scrutiny where, as here, a petition for review of a decision by the SEC has been filed. Even so, we conclude that Erenstein received all the due process to which he was entitled. Specifically, we have never held that objections made to requests for information by NASD staff should be heard by an independent arbiter, and such a framework would seriously undermine the NASD's ability to function as a self-regulatory organization. Moreover, the record here suggests that officials acted in a manner consistent with agency rules, that Erenstein received notice and an

15

opportunity to be heard, and that, because the omissions, if any, were subject to review by both the SEC and this Court, no due process violation occurred.

Accordingly, we deny Erenstein's petition for review in this respect as well.

**PETITION DENIED.**